[828 NE2d 67, 795 NYS2d 151]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BERNARD PITTS, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY BARNWELL, Appellant.

Argued January 6, 2005; decided February 15, 2005

## POINTS OF COUNSEL

*Edward J. Nowak, Public Defender,* Rochester (*James Eckert* of counsel), for appellant in the first above-entitled action. The motion court erroneously denied, without a hearing, Mr. Pitts' Criminal Procedure Law § 440.30 (1-a) motion for DNA testing of material secured in connection with his trial. (*People v Hayes,* 284 AD2d 1008; *People v Smith,* 245 AD2d 79; *People v Kellar,* 89 NY2d 948; *Kyles v Whitley,* 514 US 419; *People ex rel. Harris v Sullivan,* 74 NY2d 305; *People v Allen,* 92 NY2d 378; *People v Davis,* 299 AD2d 874; *People v Ahlers,* 285 AD2d 664; *People ex rel. Nichols v Board of County Canvassers,* 129 NY 395; *Matter of Siwek v Mahoney,* 39 NY2d 159.)

*Michael C. Green, District Attorney,* Rochester (*Nancy A. Gilligan* of counsel), for respondent in the first above-entitled action. Defendant failed to satisfy the threshold requirements of CPL 440.30 (1-a) to warrant DNA testing of evidence secured at the time of his arrest. Denial of his application, without a hearing, was warranted. (*People v Kellar,* 218 AD2d 406, 89 NY2d 948; *People v Pugh,* 288 AD2d 634, 91 NY2d 976; *People v Keene,* 4 AD3d 536; *People v Degondea,* 3 AD3d 148; *People v Davis,* 299 AD2d 874, 99 NY2d 581; *People v Shenouda,* 307 AD2d 938, 100 NY2d 645; *People v Logan,* 291 AD2d 459, 98 NY2d 638; *People v Ahlers,* 285 AD2d 664; *People v Santorelli,* 95 NY2d 412.)

*Edward J. Nowak, Public Defender,* Rochester (*James Eckert* of counsel), for appellant in the second above-entitled action. The lower court erroneously denied, without a hearing, Mr. Barnwell's Criminal Procedure Law § 440.30 (1-a) motion for DNA testing of material secured in connection with his trial. (*People v Hayes,* 284 AD2d 1008; *People v Smith,* 245 AD2d 79; *People v Kellar,* 89 NY2d 948; *Kyles v Whitley,* 514 US 419; *People ex rel. Harris v Sullivan,* 74 NY2d 305; *People v Allen,* 92 NY2d 378; *People v Davis,* 299 AD2d 874; *People v Ahlers,* 285 AD2d 664; *People ex rel. Nichols v Board of County Canvassers,* 129 NY 395; *Matter of Siwek v Mahoney,* 39 NY2d 159.)

*Michael C. Green, District Attorney,* Rochester (*Nancy A. Gilligan* of counsel), for respondent in the second above-entitled action. The Appellate Division properly concluded that a hearing into the destruction of evidence, which was secured at the time of defendant's arrest, was not required since defendant's direct appeals were exhausted 10 years prior to his application for DNA testing pursuant to CPL 440.30 (1-a). (*People v Satterfield,* 66 NY2d 796; *People v Crimmins,* 38 NY2d 407; *People v Ahlers,* 285 AD2d 664, 97 NY2d 701; *People v Morehouse,* 5 AD3d 925, 3 NY3d 644; *People v Pugh,* 288 AD2d 634; *People v Chichester,* 162 Misc 2d 658; *People v Wesley,* 83 NY2d 417; *People v Davis,* 299 AD2d 874, 99 NY2d 581; *People v Shenouda,* 307 AD2d 938, 100 NY2d 645; *People v Logan,* 291 AD2d 459, 98 NY2d 638.)

### OPINION OF THE COURT

G.B. SMITH, J.

These appeals present two questions: (1) does CPL 440.30 (1-a) impose a due diligence requirement, limiting the time by

which a defendant must bring a postconviction motion requesting DNA testing and (2) does a defendant who brings such a motion bear the burden of establishing that the specified DNA evidence exists and is available in quantities sufficient to be tested?

The courts below denied defendants' postconviction motions without a hearing, ruling that defendants did not bring timely motions for relief and therefore did not exercise the requisite due diligence and, further, that they did not demonstrate that the specified DNA evidence existed and was available for testing. For the reasons that follow, we conclude that there is no time limit for bringing a postconviction motion requesting the performance of forensic DNA testing, and the defendant does not bear the burden of showing that the specified DNA evidence exists and is available for testing.

## FACTS

*People v Bernard Pitts*

On October 15, 1994, a 14-year-old female was raped at the Rundel Library in Rochester by a male acquaintance. Two days later, the victim disclosed the rape to her mother, sought medical attention at an area hospital and reported the rape to the police. By the time doctors completed the rape kit, the victim had showered and cleaned herself.

Pitts was arrested when the 14 year old saw him on the street and alerted her mother. Pitts originally entered a plea of guilty to a superior court information charging him with rape in the third degree. However, because the court determined that it could not comply with the promised sentence of 1 to 3 years, Pitts was allowed to withdraw his guilty plea. Pitts was subsequently indicted on the charges of rape in the first degree (Penal Law § 130.35 [1]) and rape in the third degree (Penal Law § 130.25 [2]) and proceeded to trial. At trial, the People did not introduce any forensic evidence of sexual intercourse. Defendant's expert witness testified that the victim's efforts to clean herself explained the absence of forensic evidence.

On October 12, 1995, the jury convicted Pitts of one count of rape in the first degree and one count of rape in the third degree. At sentencing, the prosecutor referred to the original plea agreement and noted that Pitts "does admit having sexual

intercourse with the victim." The court then sentenced Pitts to concurrent prison terms of $8^{1}/_{3}$ to 25 years and 1 to 3 years.[1]

On June 20, 2001, more than five years after his direct appeal was final, Pitts, while in prison, filed a pro se motion pursuant to CPL 440.30 (1-a) seeking an order directing the performance of forensic DNA testing on certain evidence. In particular, he requested DNA testing of vaginal swabs, oral swabs, the victim's underpants, all fibers and debris retrieved from clothing, hairs, and any other material tested by the Monroe County Public Safety Laboratory. Pitts argued that DNA material was collected in connection with his prosecution, and that a more favorable verdict would have resulted if evidence that DNA material did not come from him had been introduced at trial. The People responded that Pitts did not establish that the material he wanted contained DNA.[2] The People also argued that Pitts' application was untimely and should be dismissed on that ground.

On August 27, 2001, Monroe County Court denied Pitts' motion without a hearing, finding that he did not exercise the requisite due diligence in making the application more than five years after his direct appeals were exhausted and almost three years after a previous CPL article 440 motion. Further, the court ruled that defendant failed to show that any of the items sought to be tested contained DNA. Because the jury was informed that no forensic evidence linked Pitts to the crime, the court found that even had DNA evidence been recovered in connection with the trial, there was no reasonable probability that the verdict would have been more favorable to defendant.

On June 14, 2004, the Appellate Division affirmed "for reasons stated in decision at Monroe County Court" (*People v Pitts*, 8 AD3d 1122 [4th Dept 2004]). A Judge of this Court granted the defendant leave to appeal. We now affirm because no reasonable probability exists that the verdict would have been more favorable to Pitts had the results of DNA testing been introduced at trial.

---

**1.** These convictions were affirmed by the Appellate Division (*People v Pitts*, 231 AD2d 901 [4th Dept 1996]), and leave to appeal to this Court was denied (89 NY2d 928 [1996]).

**2.** According to the laboratory report concerning the victim's rape kit, no spermatozoa were observed on the slides, nor was there any seminal material detected on the swabs examined or the victim's underpants. Further, there is no indication that hair samples collected from the victim contained DNA.

*People v Anthony Barnwell*

On June 15, 1985, at about 2:00 A.M., a man who sneaked into an unlocked and unoccupied van accosted a 38-year-old female as she was driving. The man assaulted, sodomized and repeatedly raped the victim in the back of the van. After assaulting her, he left the victim in the van. She returned home and called the police. When the police arrived, the victim recounted the ordeal and described her attacker. After making her report to the police, the victim went to an area hospital for treatment. A rape kit was prepared during the hospital visit.

On or about July 15, 1985, the police stopped Barnwell in the area where the rape occurred. On July 16, 1985, the police placed Barnwell's photograph in a photo array and showed the array to the victim. She identified Barnwell as the man who had raped her. Barnwell was arrested two days later. Approximately eight months later, on February 24, 1986, the victim identified Barnwell, in a police-arranged lineup, as the man who raped her.

At trial, the People's case consisted primarily of identification testimony by the victim, who was the only witness to the crime. Barnwell relied on misidentification as his defense. On February 20, 1987, a jury convicted Barnwell of rape in the first degree (two counts) (Penal Law § 130.35 [1]), sodomy in the first degree (Penal Law § 130.50 [1]), robbery in the second degree (Penal Law § 160.10 [2] [a]), assault in the second degree (Penal Law § 120.05 [6]) and grand larceny in the third degree (Penal Law § 155.30 [5]). He was sentenced to concurrent terms of 7 1/2 to 15 years for rape and sodomy, 3 1/2 to 7 years for robbery and assault and 2 to 4 years for grand larceny. The Appellate Division affirmed (*People v Barnwell*, 155 AD2d 886 [4th Dept 1989]) and a Judge of this Court denied leave to appeal (75 NY2d 810 [1990]).

On September 20, 2000, approximately 10 years after Barnwell's direct appeal was final, and more than six years after the enactment of CPL 440.30 (1-a), Barnwell, while in prison, filed a pro se motion pursuant to CPL 440.30 (1-a) for DNA testing on hairs, semen and a cigarette butt recovered in connection with his prosecution. Barnwell alleged in his motion that the evidence established that he and the victim were unknown to each other before the crime, that a question of identity was raised at trial, and that there was a reasonable probability that had DNA evidence been admitted at trial, the verdict would

have been more favorable to him. In response, the People argued that a due diligence standard applied, and that Barnwell failed to meet it by filing an untimely motion—six years after the enactment of CPL 440.30 (1-a) and 13 years after his conviction. The People also claimed that DNA testing was impossible, relying on a hearsay affirmation stating that "[a]ccording to" an employee of the Property Clerk's office, the rape kit had been destroyed in accordance "with the [Police] Department's policy."

On December 20, 2000, Supreme Court denied Barnwell's motion for an order directing DNA testing without a hearing. Given that the prosecution's case at trial consisted primarily of identification testimony by the victim, the fact that there were no other witnesses to the crime, and the fact that Barnwell and the victim were unknown to each other before the incident, the court indicated that this case presents the type of case where DNA testing would make a difference if conducted at this point in time. However, the court noted that "the problem in this case is that the evidence originally obtained and containing the potential DNA evidence to be tested no longer exists."

On April 30, 2004, the Appellate Division affirmed, holding that under Appellate Division precedent "it is incumbent upon a defendant to show that the evidence to be tested still exists and is available in quantities sufficient to make testing feasible at this late date." (6 AD3d 1147, 1147 [2004] [internal quotation marks omitted].) The Court stated, "[f]urther, there is no need for a hearing to inquire into the destruction of the evidence because the People were under no obligation to preserve the evidence after defendant's direct appeals were exhausted in 1990, more than 10 years prior to the instant motion." (*Id.* at 1147-1148.) A Judge of this Court granted the defendant leave to appeal. We now reverse and remit this case to Supreme Court for further proceedings as set forth below.

## DISCUSSION

Over the last 10 years, forensic DNA testing has become an accurate and reliable means of analyzing physical evidence collected at crime scenes and has played an increasingly important role in conclusively connecting individuals to crimes and exonerating prisoners who were wrongfully convicted.

In 1994, the Legislature enacted CPL 440.30 (1-a), establishing a new procedure for defendants who were convicted prior to 1996 to secure DNA testing. In 2004 the Legislature amended

CPL 440.30 (1-a) to allow any defendant, regardless of the date of conviction, to move for a DNA testing order. The amendment further empowered courts to direct prosecutors to inform defendants of any information in the prosecutor's possession regarding the current location of the evidence to be tested, whether the evidence still exists, and the last-known physical location of the evidence. These statutory requirements—setting forth a standard different from that applied in other CPL article 440 motions to vacate convictions involving newly discovered evidence and expanding the class of defendants to whom testing is available—reflect the vital importance and potential exonerating power of DNA testing.

Under CPL 440.30 (1-a), as originally enacted, a defendant convicted before January 1, 1996 can move for DNA testing on specified evidence.[3] The court then determines whether any evidence containing DNA was secured in connection with the trial and "the court shall grant" the defendant's application if it determines that had a DNA test been conducted on the evidence and had the results of that evidence been admitted at trial, "there exists a reasonable probability that the verdict would have been more favorable to the defendant."[4]

In each of the cases before us, the Appellate Division concluded that defendant failed to exercise due diligence in bringing his motion requesting the performance of forensic DNA testing and did not "show that the evidence to be tested still exists and is available in quantities sufficient to make testing feasible" (*People v Ahlers*, 285 AD2d 664, 665 [3d Dept 2001], *lv denied* 97 NY2d 701 [2002]).

We conclude that these Courts erred in interpreting CPL 440.30 (1-a) to impose upon defendants a due diligence require-

---

**3.** Both defendants were convicted before January 1, 1996; they made and the courts determined their motions under the prior version of the statute. Accordingly, the 2004 amendment does not affect the outcome of these cases.

**4.** CPL 440.30 (1-a), as enacted on August 2, 1994 provided:

"In cases of convictions occurring before January first, nineteen hundred ninety-six, where the defendant's motion requests the performance of a forensic DNA test on specified evidence, and upon the court's determination that any evidence containing deoxyribonucleic acid ('DNA') was secured in connection with the trial resulting in the judgment, the court shall grant the application for forensic DNA testing of such evidence upon its determination that if a DNA test had been conducted on such evidence, and if the results had been admitted in the trial resulting in the judgment, there exists a reasonable probability that the verdict would have been more favorable to the defendant."

ment limiting the time within which to make a CPL 440.30 (1-a) motion, and to place on defendants the burden to establish the location and status of the evidence they seek to be tested.

■ We hold that there is no time limit for bringing a postconviction motion requesting the performance of forensic DNA testing. A defendant may move for DNA testing pursuant to CPL 440.30 (1-a) at any time. We further hold that the defendant does not bear the burden of showing that the specified DNA evidence exists and is available in suitable quantities to make testing feasible. To the contrary, it is the People, as the gatekeeper of the evidence, who must show what evidence exists and whether the evidence is available for testing.

We now consider whether the lower courts properly denied the instant postconviction motions without a hearing or further proceedings into whether the evidence sought to be tested still exists.

■ As to *Pitts*, we conclude that the trial court correctly denied the motion without a hearing on the ground that no reasonable probability existed that Pitts would have received a more favorable verdict had a DNA test been conducted and had the results of the test been introduced at trial.

Given the victim's two-day wait before reporting the rape and receiving medical attention, and the testimony of defendant's expert that no physical evidence was recovered from the victim, there is no reasonable probability that DNA testing could have led to a more favorable verdict.[5]

■ In *Barnwell*, on the other hand, the court improperly denied the motion without a hearing or further proceedings. Though Barnwell requested testing of specified evidence containing DNA and the motion court found that defendant met the CPL 440.30 (1-a) reasonable probability requirement, the motion court denied Barnwell's application, relying merely on the People's conclusory assertion that the evidence in question no longer exists. The motion court also held that defendant did not exercise due diligence in pursuing his CPL 440.30 (1-a) motion. This was reversible error. As stated above, CPL 440.30 (1-a) does not impose a time limitation on a defendant moving for DNA testing.

Further, upon Barnwell's motion, and the motion court's determination that, had the evidence been tested and the results

---

5. We also note that, at sentencing, defendant Pitts admitted to having sexual intercourse with the victim and claimed that it was consensual.

admitted at trial, the result would have been more favorable to defendant, the People, and not defendant, had the burden of establishing with sufficient specificity whether the evidence existed and could be tested. The mere assertion that the evidence no longer exists based on a phone call to a police Property Clerk's office is insufficient as a matter of law under CPL 440.30 (1-a). We thus reverse the Appellate Division's order and remit to Supreme Court, Monroe County for further proceedings to establish whether the DNA evidence in question exists. Supreme Court should take steps to obtain from the People reliable information as to whether or not the evidence sought exists and the source of such information. Adequate information from the People might include, for example, an affidavit from an individual with direct knowledge of the status of the evidence or an official record indicating its existence or nonexistence.

Accordingly, with regard to *Pitts*, the order of the Appellate Division should be affirmed. With regard to *Barnwell*, the order of the Appellate Division should be reversed and the case remitted to Supreme Court for further proceedings in accordance with this opinion.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

In *People v Pitts:* Order affirmed.

In *People v Barnwell:* Order reversed and case remitted to Supreme Court, Monroe County, for further proceedings in accordance with the opinion herein.