OPINION OF THE COURT
Arthur J. Cooperman, J.
*882 By order dated June 25, 2001, this court denied defendant’s pro se motion pursuant to CPL 440.30 (1-a) seeking DNA testing of certain evidence. Upon reargument, the court adhered to its original decision on July 31, 2001.
On appeal, the Appellate Division, Second Department, reversed the court’s order of July 31, 2001, and remitted the matter for a hearing to determine whether the physical evidence is still in existence and, if so, whether the evidence contains sufficient DNA material for testing (People v Keene, 4 AD3d 536 [2d Dept 2004]).
Factual Background
On February 14, 1989, a 15-year-old girl was accosted in the well-lit basement of her apartment building where she had gone to do laundry. Her assailant dragged her toward the incinerator room and threatened her with a gun and a knife before hitting her in the head. He pulled down her pants, pushed her to the ground and forced his penis into her anus. During the extended attack, he warned her not to look at him. Upon hearing someone approach, he fled the scene.
The victim’s sister found her in the basement and the police were called. She was transported to the hospital and a rape kit was compiled. Her clothing, consisting of a red and black striped shirt, pants and underpants, were vouchered.
Defendant was arrested for this crime on February 16, 1989.
On March 1, 1989, a representative from the District Attorney’s Office, Detective Christina Ford, removed the clothing and rape kit from New York City Police Department custody and delivered them to the Lifecodes Corporation for DNA analysis at the People’s request. The results of Lifecodes’ restriction fragment length polymorphisms (RFLP) testing of DNA semen found on the girl’s shirt and defendant’s blood declared both genetic materials to be a match.
Defendant moved to exclude the DNA evidence and the court conducted a Frye hearing (see, Frye v United States, 293 F 1013 [1923]; see also, People v Hughes, 59 NY2d 523 [1983]). During the pendency of this hearing defendant sought further DNA testing, arguing that there were different types of tests available and suggesting that there might be sufficient material available to test using an analysis other than RFLP The People *883 objected to the application at that juncture. The court ruled that it would “consider the motion” and “reserve[d] decision.”*
At the conclusion of the Frye hearing, the court held that the Lifecodes laboratory “did not substantially perform scientifically accepted tests” and its methodology “did not achieve scientifically reliable results” for admission into evidence at trial. For those reasons the court granted defendant’s motion (People v Keene, 156 Misc 2d 108, 121 [1992]).
At trial, the victim identified defendant as her assailant. The forensic scientist who had done the DNA testing on the victim’s red and black shirt testified that she had taken cuttings from the shirt, which tested positive for sperm. The shirt was admitted into evidence and although the rape kit was marked, it was not received in evidence. The defendant presented an alibi defense and called three alibi witnesses.
Defendant was convicted by jury verdict of all charges and sentenced on February 23, 1993. His conviction was affirmed on appeal (People v Keene, 213 AD2d 494 [2d Dept 1995]).
In February 2001, defendant moved pro se pursuant to CPL 440.30 (1-a) requesting DNA testing of the shirt. This court denied the motion, and upon reargument, adhered to its original decision.
After the Appellate Division’s remittitur on February 23, 2004, the People sought reargument and reconsideration.
During the approximately five-month period the People’s motion was pending, this matter was calendared before this court on 18 occasions. During these appearances the People advised the court that they were in contact with Lifecodes and that they were attempting to locate any evidence related to this case.
The motion for reargument was denied on July 20, 2004.
Hearing to Determine the Existence of Evidence
Subsequent to the Appellate Division’s denial of the People’s motion to reargue, this matter appeared on this court’s calendar on approximately 20 occasions during which time the People provided updates on their attempts to locate the specified evidence.
On May 2, 2005, the People submitted an affirmation, with exhibits annexed, which, they contended, demonstrated their extensive and exhaustive efforts to locate the evidence.
*884 Exhibits Submitted by the People
Upon the People’s request to search for evidence, Lauren Gal-breath Crane, the forensic scientist who had performed the original testing, located four samples — numbered 18912, 18913, 18918, and 18919 — in a freezer at Tepnal Lifecodes, in Stamford, Connecticut. This was the same physical facility that had housed Lifecodes. Tepnal was a partial successor to Lifecodes. Crane gave these samples to Detective Kevin Koenderman of the Queens County District Attorney’s Office (exhibit A, affidavit of Lauren Galbreath Crane).
With the expectation that the extracts found by Crane would be delivered to the Office of the Chief Medical Examiner (hereinafter OCME) for the purpose of DNA testing, Detective Frank Torres obtained an oral swab from defendant in August 2004. He vouchered that swab under voucher number L350183, and delivered it to OCME, together with a request for laboratory examination (exhibit B, affidavit of Frank Torres).
In October 2004 Detective Koenderman retrieved the four samples that Crane had located and delivered them to OCME with a request for laboratory examination (exhibit C, affidavit of Kevin Koenderman).
On November 24, 2004, John Pickert, a forensic scientist at the OCME, was assigned to retest the DNA samples from Life-codes. The samples consisted of No. 18919 from the blood of Roderick Keene; No. 18912 from the rectal swab of the victim; No. 18913 from the vaginal swab of the victim; and No. 18918 from the red and black striped shirt.
His retesting indicated that a DNA profile was obtained from the extract of defendant’s blood, and it matched the DNA profile obtained from defendant’s oral swab that was delivered to OCME by Detective Torres. As to the victim’s rectal swab extract, a female DNA profile was obtained. With respect to the extracts of the victim’s vaginal swab and the red and black striped shirt, no DNA profile could be obtained due to insufficient amounts of genetic material. (Exhibit D, affidavit of John Pickert.)
According to Doctor Robin Cotton, director of technical forensic sciences, Orchid-Cellmark-Germantown, the laboratory facility in Germantown housed Lifecodes’ old records. A search was conducted, and the Lifecodes file pertaining to this case was located. A copy of this file was delivered to a representative of the Queens District Attorney’s Office (exhibit E, affidavit of Robin Cotton).
*885 Other than the file and the samples located by Crane, no other evidence, including the victim’s shirt and rape kit, was retained by Lifecodes. The Lifecodes file contained a chain of custody record, which indicated that evidence given to Lifecodes for testing, including the rape kit and shirt, was retrieved on April 30, 1992. Further, the Germantown, Maryland, facility did not have any materials pertaining to the case. Prior to leaving the employ of Orchid-Cellmark-Germantown, Mahindra North Varma, quality assurance manager, surveyed former Lifecodes materials in the Germantown facility, and wrote to parties whose evidence still remained there, but no such letter regarding evidence under Lifecodes Lab No. 18912 was sent (exhibit E, affidavit of Robin Cotton).
According to Sergeant David Kralick, the supervising sergeant of the Police Department Property Clerk, Queens Borough Division, it appeared that the victim’s shirt and the rape kit were never returned to the Police Department following trial. The shirt, which was vouchered by the police under voucher number D510886, could not be located at the facility. Sergeant Kralick searched the bin where the property was previously located, but it was not there. According to the Property Clerk’s records, the victim’s shirt was removed prior to trial but was never returned (exhibit F, affidavit of Sergeant David Kralick).
The rape kit, which was vouchered by the police under voucher number D510847, could not be found at Pearsons Place, the Police Department facility that warehouses such evidence. Lieutenant Kevin Serpico, assigned at Pearsons Place, searched for the rape kit in the storage bin where it would have been located, but the kit was not there. According to the records of Pearsons Place, the rape kit was removed from the facility on March 1, 1989 by Detective Christina Ford. Further, the 112th Police Precinct had no records regarding this case (exhibit G, affidavit of Kevin Serpico).
The last location of the shirt and rape kit to which the People can point is at trial in 1993. During the trial, on January 21, 1993, the rape kit was not received into evidence. On the following day, the shirt, which had been cut by the forensic scientist to remove the semen stain, was admitted into evidence. The bridge sheet is blank with regard to the return of the People’s evidence after trial (bridge sheet in Supreme Court file).
Joseph Camelo, manager of the Record Room in the District Attorney’s Office, searched for the People’s trial file in the Record Room and in Archives but could not locate it. He was unable *886 to locate the evidence in the District Attorney’s Office, if it was ever returned after trial (exhibit I, affidavit of Joseph Camelo).
Jill Storms, supervisor of support staff, District Attorney’s Office Appeals Bureau, searched the Appeals Bureau record room for the trial file without success (exhibit J, affidavit of Jill Storms).
Sergeant Craig Abruzzo searched the evidence safes within the District Attorney’s Office but could not locate any evidence relating to this case. He also requested that Senior Court Officer Lieutenant Terrence Flanagan — who is responsible for operations in the Kew Gardens courthouse — search the court records and safes but was told that no evidence or logbooks referring to this evidence could be located (exhibit K, affidavit of Craig Abruzzo).
Detective Koenderman searched in the District Attorney’s Office Special Victims Bureau and could not find any evidence from this case (exhibit C, affidavit of Kevin Koenderman).
Lieutenant Flanagan checked the court evidence safe for evidence in this case and for logbooks or records referring to the evidence. However, no such evidence or records could be located (exhibit L, affidavit of Terrence Flanagan).
By response dated May 10, 2005, defendant contended that further DNA testing on the four samples recovered from the Lifecodes laboratory was warranted. Specifically, he argued that Y chromosome short tandem repeat loci (Y-STR) technology — a methodology different from that employed by the OCME in its recent testing — should have been attempted. Defendant submitted the following documents.
Exhibits Submitted by Defendant
Nina Morrison, Esq., staff attorney for the Innocence Project, stated that she had been informed by Defense Counsel Gaffey that portions of evidentiary samples of DNA extracts, which had been preserved following earlier testing by Lifecodes, had been retained and sent to the OCME. She stated that there were numerous occasions where it was possible for probative results to be obtained on successive rounds of DNA testing using different methodologies and/or laboratories. She received the DNA test results and the OCME file from defense counsel and sent those documents to Dr. Sudhir K. Sinha, a DNA expert, for his review and recommendation (exhibit A, affirmation of Nina Morrison, Esq.).
By letter dated May 11, 2005, Sudhir K. Sinha, Ph.D., president and laboratory director of Reliagene Technologies, Inc., *887 stated that he reviewed the information sent by Morrison. He recommended that further DNA testing using Y-STR technology should be attempted on the remaining DNA extract from the rectal swab in this case. He asserted that such testing had the potential to yield a viable male profile from the perpetrator if it is present in the sample.
Additionally, Dr. Sinha said that other widely accepted Y-STR technology has the advantage of isolating and amplifying DNA from the Y chromosome — which only the male possesses — thus making it possible to yield an interpretable male profile from mixed male-female samples in some cases where traditional STR testing cannot (also marked exhibit A, letter of Sudhir K. Sinha, Ph.D.).
The defense submitted an article entitled, “Utility of the Y-STR Typing Systems Y-PLEXtm 6 and Y-PLEXtm 5 in Forensic Casework” (exhibit B) and an order of the Circuit Court of the Eighteenth Judicial Circuit in Brevard County, Florida, dismissing the charges against a defendant. Included within that exhibit was a related newspaper article discussing the dismissal (exhibit C).
The defense also submitted an affidavit of Bill Fletcher, an investigator for the Hamilton County Prosecutor’s Office in Ohio, regarding his discovery of certain swabs relating to a criminal case, which was believed to have been lost.
By reply affirmation, dated August 25, 2005, with exhibits annexed, the People reported on their search for any evidence relating to defendant’s case, not merely that which was centered on the subject shirt. They also submitted a supplemental affidavit from John Pickert.
Exhibits Submitted by the People in Their Reply Affirmation
Russell Rothberg, Esq., the Assistant District Attorney trial prosecutor, did not have any independent recollection of the whereabouts of the evidence after the trial (exhibit A, affirmation of Russell Rothberg, dated Aug. 23, 2005).
John Pickert, the forensic scientist at OCME, stated that in 2004, at the request of the People, Y-STR typing was attempted on the sample DNA extract No. 18912 from the rectal swab of the victim. No male DNA was detected (exhibit B, supplemental affirmation of John Pickert, dated Aug. 23, 2005).
*888 Defendant’s Surreply Affirmation
Counsel for defendant contended that the People failed to explain the disappearance of their trial folder and argued that defendant is eligible for postconviction DNA testing.
Findings of Fact
The People have conducted an extensive and exhaustive search to determine if the victim’s red and black striped shirt is still in existence. They expanded their search to determine whether any evidence relating to this case, including other items of clothes and/or the rape kit, is still in existence.
The People located the DNA extracts that had been retained by Lifecodes following the original DNA testing in 1989. The extracts consisted of: No. 18919 from the blood of Roderick Keene; No. 18912 from the rectal swab of the victim; No. 18913 from the vaginal swab of the victim; and No. 18918 from the red and black striped shirt.
In October 2004, the four samples were collected and delivered to the OCME. John Pickert, a forensic scientist at the OCME, conducted the retesting. Employing polymerase chain reaction (PCR) DNA typing on the rectal swab, he obtained female DNA. The DNA extract from the vaginal swab and the DNA extract from the red and black striped shirt also were retested using PCR DNA analysis. There was, however, insufficient DNA material in those extracts to draw conclusions about the donor. Additionally, Y-STR typing was attempted on the sample DNA extract taken from the rectal swab of the victim and no male DNA was detected.
The current physical location of the victim’s red and black striped shirt and the rape kit appears to be unknown. The last known physical location of these items was in this court during trial in January 1993.
Conclusion
At the hearing, the People had the burden of establishing with sufficient specificity whether the evidence existed and whether it could be tested (People v Keene, 4 AD3d, supra at 537; People v Pitts, 4 NY3d 303 [2005]).
The People have satisfied their burden by submitting reliable information concerning their efforts to determine the whereabouts of the evidence (People v Pitts, supra at 312). Despite their thorough search, the red and black striped shirt does not appear to be in existence.
*889 Retesting, however, was conducted on the four DNA extracts that were discovered at Tepnal Lifecodes. The results established that, as to the extracts of the victim’s vaginal swab and the red and black striped shirt, there were insufficient amounts of genetic material to obtain a DNA profile. It was also demonstrated by Y-STR testing performed on the extract of the victim’s rectal swab that only female DNA was present.

Proceeding minutes, Mar. 11, 1991, line 84.