■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS KAMINSKI, Appellant. [876 NYS2d 242]—

Kavanagh, J. (1) Appeal from an order of the County Court of Chemung County (Buckley, J.), entered May 8, 2007, which, among other things, denied defendant's motion pursuant to CPL 440.30 (1-a) for the performance of forensic DNA testing on specified evidence, and (2) motion to expand the record on appeal.

Late on the evening of October 20, 1979, the victim was alone and asleep in her home with her 15-month-old child when she was suddenly awakened by a man wearing a ski mask and gloves, who placed his hand over her mouth, told her to be quiet and demanded money. As the victim attempted to get out of bed, the intruder continued to hold her down and stated that he would not hurt her if she did what she was told. The intruder than told the victim that he had to "have" her, turned on the light in the bedroom, removed his mask, pants and gloves, and sexually assaulted her. As the intruder was leaving the residence, the victim recognized him as someone she had previously seen with friends while they were searching for a horse that had escaped from the victim's property. After the intruder left, the victim immediately contacted a neighbor, told him that she had been raped and together they reported the incident to the State Police. Based on information received from the victim, the State Police were able to identify defendant and, after placing him under arrest, charged him with rape in the first degree, sodomy in the first degree (two counts) and burglary in the second degree.

At trial, defense counsel admitted that his client was the man wearing the mask who forced his way into the victim's residence, but claimed that the People had failed to prove beyond a reasonable doubt that the victim had been forcibly compelled to participate in any sexual encounter. The jury, by its verdict, rejected this defense and convicted defendant of all of the charges contained in the indictment. Prison sentences of $8\frac{1}{3}$ to 25 years were imposed upon defendant for his convictions for rape and sodomy, and 5 to 15 years for his conviction for burglary, all of which were directed to run concurrently.[1]

More than 25 years after his trial, defendant moved to vacate the judgment of conviction (*see* CPL 440.10) and requested that an order be entered directing that DNA testing be performed on sheets removed from the victim's bed after the incident (*see* CPL 440.30 [1-a]).[2] County Court denied both applications, prompting this appeal.

Initially, the People move for an order to enlarge the record on appeal so that it includes portions of the trial transcript that were considered by County Court when it decided defendant's motion. As there is no question as to the relevance or the accuracy of these segments of the trial record, or that they were considered by the court when it decided this motion, they must be part of the record for there to be an intelligent review of the issues raised by defendant on this appeal.[3] Therefore, the People's motion to expand the record is granted.

Turning to the merits of the appeal, an application that certain items of evidence be subject to DNA testing should be granted if it can be shown that a " 'reasonable probability' " exists that such tests, if performed and the results of which admitted at trial, would have resulted in a verdict " 'more favorable to the defendant' " (*People v Pitts*, 4 NY3d 303, 310 [2005],

---

**1.** While it agreed with this Court's decision to affirm defendant's convictions for rape and burglary (87 AD2d 724 [1982]), the Court of Appeals reversed his convictions for sodomy and remitted those charges for a new trial (58 NY2d 886 [1983]). Those charges were eventually dismissed.

**2.** In his CPL 440.10 motion, defendant also claimed that jury tampering occurred during the trial, the District Attorney and the trial judge engaged in misconduct and the evidence placing him at the scene of the crime was not credible. Given that each of these claims could have been, but were not, raised on defendant's direct appeal from the judgment of conviction, County Court properly denied any application made by defendant based upon them (*see* CPL 440.10 [2] [c]; *People v Tucker*, 40 AD3d 1213, 1217 [2007], *lv denied* 9 NY3d 882 [2007]).

**3.** Defendant's counsel indicates that County Court conducted a "sua sponte" review of the trial record in response to defendant's pro se motion and that these portions of the trial record had not been submitted to County Court by either party for its consideration in deciding the motion.

quoting CPL 440.30 [1-a]; *see People v Hurdle*, 56 AD3d 317, 317 [2008]; *People v King*, 38 AD3d 1066, 1067 [2007], *lvs denied* 9 NY3d 877, 880 [2007]; *People v Brown*, 36 AD3d 961, 961-962 [2007], *lvs denied* 8 NY3d 919, 920 [2007]; *compare People v West*, 41 AD3d 884, 884-885 [2007]).[4] Here, the victim testified that she was forced to perform oral sex on her attacker and that after he ejaculated, she gagged and disgorged the ejaculate onto defendant. Defendant argues that if his DNA is not found on the bed sheets, that would suggest that force was not used, and the encounter, contrary to the victim's claim, was consensual. Initially, we note that this issue and, in particular, the significance to be accorded to the fact that defendant's DNA was not on the bed sheets, was fully developed at trial. In that regard, defense counsel vigorously argued that the People failed to prove that defendant's DNA was on the bed sheets and, since the victim was not injured in the encounter, it was only "reasonable to assume" that it was completely consensual. Under the circumstances, DNA testing would have, at best, constituted collateral evidence that simply served to confirm what had already been established as a fact at trial and, if introduced, would have added little in terms of the evidence that was before the jury at the time it conducted its deliberations and arrived at its verdict.

Defendant also argues that if these tests established that it was not his DNA on the bed sheets, then someone else must have perpetrated this attack. However, the fact that defendant forced his way into the victim's residence while wearing a mask and gloves on the night in question was never a substantive issue to be resolved by the jury in its deliberations. This is especially true given defense counsel's statement in summation that "we admit that defendant did at first go into that house, into [the victim's] house, and that [defendant] at the time was wearing a mask and gloves, and he went up—went upstairs, and into [the victim's] bedroom, and that for a period of time he did have his hands placed over her mouth." This concession was obviously made because other evidence introduced at trial conclusively established that defendant was in the victim's house on the night of the attack. Specifically, after the attack, the victim told the State Police that she recognized her assailant as an individual who had recently visited her house with friends who were boarding a horse on her property. The friends identified defendant, provided the police with contact information and arrangements were made for the victim to place a tape-recorded telephone call to defendant's residence within hours after the

---

4. The bed sheets were never introduced into evidence at trial and were returned to the victim in 1981.

attack. A tape recording of the ensuing conversation was properly admitted into evidence at trial and conclusively established that defendant not only forced his way into the victim's residence while wearing a mask and gloves, but also that their encounter was anything but consensual.[5] This evidence was corroborated by the victim's in-court identification of defendant and the recovery of clothing in his possession, including the mask and gloves that were used in the attack. Based on the foregoing, County Court's decision that DNA testing, if performed, would not have altered the outcome of this trial and its decision denying defendant's motion without a hearing should be affirmed (*see People v Simpson*, 35 AD3d 901, 902 [2006], *lv denied* 8 NY3d 927 [2007]).

Cardona, P.J., Rose, Kane and Stein, JJ., concur. Ordered that the motion is granted.

Ordered that the order is affirmed.

---

5. During the tape recording, defendant asked the victim, "How did you know who I was?" and the victim explained how she knew him and got his number. She asked defendant, "Why did you make me do it with you?" and defendant answered, "I don't know." She asked him, "Why did you wear gloves though?" and he answered "Well, I don't know." She asked, "Would you hurt me?" and he answered, "No. I did though, didn't I?" She again asked him why he wore gloves and a mask and he said, "I didn't want you to know who I was."