People v Dorsey (2019 NY Slip Op 01526)





People v Dorsey


2019 NY Slip Op 01526


Decided on March 5, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 5, 2019

Sweeny, J.P., Mazzarelli, Kahn, Oing, Singh, JJ.


7489 6947/87

[*1]The People of the State of New York, Respondent,
v
Ronald Dorsey, Defendant-Appellant.


Robert S. Dean, Center for Appellate Litigation, New York (Alexandra L. Miter of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Megan DeMarco of counsel), for respondent.



Order, Supreme Court, New York County (Roger S. Hayes, J.), entered on or about January 4, 2017, which denied defendant's CPL 440.30(1-a) motion for DNA testing and his CPL 440.10 motion to vacate a judgment rendered June 11, 1998, unanimously affirmed.
At defendant's 1988 trial on two counts each of sodomy in the first and second degrees (now known as criminal sexual act), the complainant, who was 13 years old at the time of the alleged crime, testified. He stated that defendant, who had hired the complainant to work in a building defendant was renovating, approached him from behind while he was sweeping the floor, pulled down his pants and underwear, and then placed his penis in the complainant's anus and moved back and forth for about five minutes. The complainant further testified that, on the next day, defendant followed him into the building's basement, ordered him to lie down, pulled down his pants, and sodomized him again. The complainant did not know if defendant ejaculated on either occasion. Police, who were contacted by the complainant's mother after he told her about the assaults, seized as evidence the complainant's underwear, which he wore during both attacks. The police found a semen stain in the rear of the underwear. A medical examination revealed that the complainant had an external bruise near his anus that could have been caused by sexual abuse and that he did not have any internal tears or lacerations.
Defendant was convicted of all counts. This Court unanimously affirmed his conviction, stating, inter alia, that "[w]hile [complainant]'s and the detectives' testimony were sufficient to sustain the convictions, the presence of semen on the bottom of [complainant]'s underwear further corroborated [complainant]'s account of the attacks" (People v Dorsey, 166 AD2d 180, 181 [1st Dept 1990], lv denied 76 NY2d 1020 [1990], lv denied on reconsideration 77 NY2d 877 [1991]).
On October 26, 1992, defendant filed a petition for a federal writ of habeas corpus. The petition was docketed on December 10, 1992. The petition was granted, and the judgment of conviction vacated, on a finding that defendant had been deprived of effective assistance of counsel when his attorney did not introduce at trial the results of serological testing that had been performed on the complainant's underwear (see Dorsey v Kelly, 1997 WL 400211, 1997 US Dist LEXIS 10205 [SD NY 1997], affd sub nom Dorsey v People, 164 F3d 617 [2d Cir 1998]). The habeas court specifically found that the testing showed the presence of two types of antigens at the site of the semen stain, both of which could have come from the victim, but only one of which could have come from defendant, making it impossible that defendant could have been the sole source of the semen. The court held that failing to introduce the results was unreasonable and prejudiced defendant because the reports would have "substantially weakened the probative significance of the semen stain on the underpants" (1997 WL 400211 at *8, 1997 US Dist LEXIS at *22).
When the parties appeared to schedule defendant's second trial, with defendant proceeding pro se, the People informed the court that the physical evidence, including the [*2]underwear, rape kit, and blood and saliva samples, had been destroyed by the NYPD in November 1992 (i.e., after defendant filed the habeas petition but before it was docketed). The trial court denied defendant's motion to dismiss the indictment on the basis of the destruction of the evidence, rejecting defendant's argument that he was prejudiced, since the results of testing that had previously been done on the evidence remained available. The court suggested giving an adverse inference charge, but ultimately did not issue such a charge to the jury.
At the second trial, the complainant gave testimony consistent with his testimony at the first trial, with more detail. His mother testified that he was examined at Harlem Hospital, where the doctor noticed a small bruise near the lower part of his anal-rectal canal, indicating that the complainant had suffered a soft tissue injury with some bleeding. The doctor estimated that the injury had been inflicted between 24 and 48 hours earlier.
Mary Quigg, an NYPD forensic serologist, testified that she had analyzed the contents of the rape kit on November 20, 1987, concluding that a yellowish stain in the rear of the underwear contained sperm. In January 1988, Quigg reexamined the underwear, as well as blood and saliva samples taken from the complainant and defendant. Based on the blood type and antigens present in the samples, Quigg found the tests inconclusive, concluding that the stain could have come from someone with type A blood, like the complainant, but also could have been a mixture of secretions from a person with type A blood and a person with type O blood. Defendant has type O blood. Quigg further testified that the underwear was not tested for DNA because such testing was not available in November 1987 or January 1988.
Defendant was once again convicted, and this Court affirmed the conviction, finding that there was "overwhelming evidence that defendant used physical force to compel the victim to engage in sexual acts" (300 AD2d 136, 137 [1st Dept 2002]).
On August 15, 2016, defendant moved pursuant to CPL 440.30(1-a) for DNA testing of the underwear. He argued that the People had failed to establish that the NYPD actually destroyed the evidence. This was, according to defendant's contention, because they presented no specific evidence about when or how the sample was destroyed, other than telling the court before trial that the prosecutor had been told of its destruction by a sergeant in the property clerk's office. Defendant claimed that a hearing was necessary to establish whether the evidence still existed, and that there was a reasonable probability that the outcome of his trial would have been more favorable if DNA testing had been completed, since it could have proved that the semen came from complainant or a third party. Defendant also moved to set aside his conviction under CPL 440.10(1)(h), arguing that, assuming he established that the NYPD destroyed the semen sample, it did so in bad faith and in violation of his due process rights, since the exculpatory value of the semen was being litigated in the habeas proceeding when the sample was destroyed.
In opposition, the People submitted documents from the NYPD and the Office of the Chief Medical Examiner (OCME) purporting to show that the rape kit and exemplars containing blood and saliva samples from defendant and the complainant were destroyed in November 1992. Specifically, the People presented a letter from a sergeant in the NYPD Property Clerk Division, who stated that he had "conducted a review of all relevant records" and determined that the subject evidence had been destroyed. For each item, the sergeant provided an invoice that bore the handwritten word "destroyed" next to it. He also attached excerpts from a logbook entitled "Manhattan Property Clerk Closed Vouchers Master Listing," which listed each item along with the "disposition code" that corresponded to "local destruction." The People also submitted a letter from a special counsel at OCME who related that a senior criminologist had searched a variety of databases, detailed in the letter, for the items, but found no matches. The letter further stated that a supervisor in the evidence unit had searched the evidence database but found nothing pertinent. Finally, the People presented documentation from the NYPD lab, including an affidavit by a managerial criminologist, reflecting that the physical evidence had been analyzed in the lab in 1987 and 1988 and then returned to detectives or the property clerk.
Defendant contended that the People's showing was inadequate to avoid a hearing, since, inter alia, physical searches of the NYPD property unit and laboratory, as opposed to mere record searches, were not conducted. The court summarily denied defendant's motion. With respect to [*3]the 440.10 due process claim, the court found that, given that all parties were aware before the second trial in 1998 that the evidence had been destroyed in 1992, facts in support of defendant's current claims could readily have been made to appear on the record in a manner that would have provided adequate basis for review on appeal. Since they were not, the court declined to consider the claim, citing CPL 440.10(3)(a).
The court nevertheless addressed the merits of the 440.10 claim, as well as the 440.30 claim, and found that the People had met their burden of showing that the potential DNA sample had been destroyed. It concluded that the evidence showed that the People had made "diligent efforts" to locate the property, albeit to no avail. Accordingly, the court found no reason to remand for an evidentiary hearing on this matter. The court further rejected the due process claim that the property was destroyed in bad faith, finding that it was not destroyed while the federal habeas petition was pending because defendant "filed" the petition one month after the evidence was destroyed. The court also found that there was no indication that the police believed the evidence was exculpatory.
Any defendant, regardless of the date of conviction, may move for DNA testing on specified evidence. The court shall grant the application if it determines that had a DNA test been conducted on the evidence and had the results of that evidence been admitted at trial, "there exists a reasonable probability that the verdict would have been more favorable to the defendant" (CPL 440.30[1-a][a][1]). Defendant bears the burden of making the "reasonable probability" showing (People v Sposito, 30 NY3d 1110, 1111 [2018]). Where the People assert that the evidence to be tested has been destroyed or cannot be located, the statute provides that the people must make "a representation to that effect" and submit "information and documentary evidence in the possession of the people concerning the last known physical location of such specified evidence" (CPL 440.30[1-b][b]). It is the People's burden to show that the evidence could no longer be located and was thus no longer available for testing (People v Garcia, 65 AD3d 932 [1st Dept 2009], lv denied 13 NY3d 907 [2009]).
We find that the People met their burden. Notwithstanding systemic problems that have been identified in the way that the NYPD tracks whether evidence has been destroyed (see Newton v City of New York, 779 F3d 140, 154 [2d Cir 2015], cert denied __ US__, 136 S Ct 795 [2016]), defendant failed to show that the People, in this instance, did not adequately establish that the evidence cannot be located. First, while the signed letter from the NYPD sergeant in the Property Clerk Division stating that he had reviewed "all relevant records" was not an affidavit by an individual with direct knowledge of the status of the evidence, the case law does not require that. Rather, the necessary showing may be based on "an official record" (People v Pitts, 4 NY3d 303, 312). Indeed, this case demonstrates the need for such flexibility, since the subject evidence is more than 2 ½ decades old. Further, the People correctly point out that the sergeant's letter and the attached invoices sufficiently establish that evidence was destroyed in 1992. Also, the affidavit by the NYPD lab criminologist, together with the lab records themselves, confirms that the invoices of destroyed evidence described the physical evidence in defendant's case. The lack of any signature near the "destroyed" notation on the invoices does little, by itself, to call into question the overall accuracy of the invoices. The People do not specifically address defendant's particular arguments about the lack of clarity as to the physical evidence that was in the kit when it was returned to the property room, other than by pointing to Quigg's trial testimony that she placed all the contents of the rape kit back into the kit and sealed it. This issue and the other recordkeeping issues identified by defendant do not render the People's proof of destruction insufficient under the current case law.
In any event, we find that defendant has not carried his burden of establishing that, even had he been able to secure the original evidence and perform DNA testing on it, there is a reasonable probability that the verdict would have been different (Pitts, 4 NY3d at 307). Defendant seeks DNA testing to bolster the serological evidence that was introduced at trial. However, that evidence already raised the possibility that he did not contribute to the semen that was found on the complainant's underwear, and the complainant acknowledged that he was not sure if defendant ejaculated. Nonetheless, the jury decided to convict, based on what it obviously believed was credible testimony from the complainant. Because of that, defendant has failed to [*4]satisfy his burden of showing that DNA evidence would have materially increased his chance of achieving an acquittal. With respect to the due process claim, defendant argues that the court abused its discretion when it found, pursuant to CPL 440.10(3)(a), that the claim was barred because defendant could have, with due diligence, adduced supporting facts that would have provided an adequate basis for review by this Court on direct appeal. We see no reason to disturb this finding. Even if defendant is correct that the People provided insufficient facts about the destruction of the evidence for him to begin an inquiry into whether they acted in bad faith, his effort would have been for naught. That is because, as discussed above, DNA testing was likely not to have had a material effect on the outcome at trial. For destruction of evidence to result in a due process violation, the destruction not only needs to be done in bad faith, it must be "potentially useful" (see Arizona v Youngblood, 488 US 51, 58 [1988]). Even were the standard more flexible under the New York State Constitution, as defendant argues, surely he would have to at least draw a connection between the destroyed evidence and the possible outcome at trial. Indeed, his argument under the State Constitution derives from the concurrence in Youngblood, in which Justice Stevens stated that "there may well be cases in which the defendant is unable to prove that the State acted in bad faith but in which the loss or destruction of evidence is nonetheless so critical to the defense as to make a criminal trial fundamentally unfair" (488 US at 61 [emphasis added]). Here, the destroyed evidence does not approach that heightened standard.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MARCH 5, 2019
CLERK