909 A.2d 1020

**George E. BLAKE**

v.

**STATE of Maryland.**

**No. 88, Sept. Term, 2005.**

Court of Appeals of Maryland.

Oct. 24, 2006.

Michael R. Malloy, Assistant Public Defender (Nancy S. Forster, Public Defender, on brief) of Baltimore, for appellant.

Shannon E. Avery, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief) of Baltimore, for appellee.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

RAKER, J.

George E. Blake was convicted in 1982 of first degree rape and first degree sexual offense. On December 1, 2004, he filed a petition in the Circuit Court for Baltimore City pursuant to Md.Code (2001, 2006 Cum.Supp.) § 8–201 of the Criminal Procedure Article,[1] requesting an evidentiary hearing and DNA testing of scientific evidence used by the State at his trial in January 1982. On May 17, 2005, the Circuit Court summarily dismissed the petition. This case requires us to address the procedures a circuit court must follow before it denies a petition for postconviction DNA testing pursuant to § 8–201 on grounds that the evidence the petitioner has asked to be tested no longer exists. We shall reverse.

## I.

In January 1982, Blake was tried and convicted in the Circuit Court for Baltimore City on the charges of first degree rape and first degree sexual offense. He was sentenced to two consecutive life terms without the possibility of parole. Evidence collected from the victim included pubic hair samples and combings, vaginal swabs, and a blood sample. An examination by the Maryland crime laboratory revealed intact, non-motile spermatozoa on the vaginal swab samples.

---

1. All subsequent statutory references herein shall be to the Criminal Procedure Article, Md.Code (2001, 2006 Cum.Supp.), unless otherwise indicated.

On December 1, 2004, appellant, George E. Blake, filed this petition in the Circuit Court for Baltimore City pursuant to § 8–201, requesting DNA testing of evidence used by the State at his trial in January 1982. On January 21, 2005, the State filed a motion to dismiss the petition and, on May 17, 2005, filed a supplemental motion to dismiss, stating that the evidence had been destroyed well before October 1, 2001. The State's certificate of service of the supplemental motion to dismiss was also dated May 17, 2005. The supplemental motion included two attachments. The first was a letter from the Assistant State's Attorney to Lt. Sandra Joyce of the Baltimore City Police Department, Special Investigations, re-questing the officer consult with the Evidence Control Unit of the Baltimore City Police Department and determine whether there was any evidence preserved relating to Blake's case. The second attachment was a memorandum directed to Major Frederick Taber from Sgt. Charles Morgan, stating that "[t]he Evidence Control Section was checked by the undersigned, and there was no Evidence found for that case."

On May 17, 2005, the same day the State filed the supple-mental motion to dismiss, the trial court summarily dismissed appellant's petition without holding a hearing or otherwise giving appellant an opportunity to respond to the State's dispositive motion. Appellant then noted an application for leave to appeal to the Court of Special Appeals, which trans-ferred the appeal to this Court pursuant to Md. Rule 8–132 on grounds that the appeal should have been noted directly to this Court.[2]

## II.

Appellant raises three issues on appeal. First, he argues that the trial court dismissed his petition improperly because it did not have an adequate factual record before it from which to conclude that the State no longer possessed the evidence appellant asked to be tested, and further that he was entitled

---

2. Section 8–201(j)(6) provides for a direct appeal to the Court of Appeals from an order entered under subsection (c), (h)(2), or (j)(4).

to a hearing to resolve the factual dispute over the existence of the evidence. Second, appellant alleges that the Circuit Court erred in denying him appointed counsel for proceedings related to his post-conviction petition for DNA testing.[3] Finally, appellant contends that the two mandatory life sentences without parole he received are illegal.

The State contends that an evidentiary hearing is not required because the plain language of § 8–201 does not require an evidentiary hearing, and therefore, the Circuit Court was permitted under the statute to dismiss appellant's petition without holding a hearing. As to the right to counsel, the State contends that there is no right to counsel under § 8–201. Finally, on the illegal sentence issue, the State argues that we should not address this issue because it was previously litigated and abandoned by appellant on his direct appeal.

### III.

Maryland is among the many states in this country that have enacted post-conviction DNA testing statutes.[4] Section

---

3. Appellant requested that an attorney be appointed to represent him in these proceedings. The record is unclear, however, whether appellant had assistance of counsel because in his petition he stated that "Now comes the Petitioner, George Blake, Pro–Se, and through his assigned counsel, Mr. Patrick Kent, Supervisor of Forensic Division at the Office of the Public Defender, 1 N. Calvert Street, 16th floor, Baltimore, Md. 21202."

4. *See* Ariz.Rev.Stat. Ann. § 13–4240 (2001); Ark.Code Ann. § 16–112–202 (2006); Cal.Penal Code § 1405 (West 2000 & Supp.2006); Conn. Gen.Stat. Ann. § 52–582 (2005); Del.Code Ann. tit. 11, § 4504 (2001); D.C.Code § 22–4133 (2001 & Supp.2006); Fla. Stat. Ann. § 925.11 (West 2001 & Supp.2006); Idaho Code Ann. § 19–4902 (Michie 2004); Ind.Code Ann. § 35–38–7–1 to 35–38–7–19 (LexisNexis 1998 & Supp. 2006); Kan. Stat. Ann. § 21–2512 (1995 & Supp.2004); La.Code Crim. Proc. Ann. art. 926.1 (1997 & Supp.2006); Me.Rev.Stat. Ann. tit. 15, § 2138 (2003 & Supp.2005); Mich. Comp. Laws Ann. § 770.16 (West 2000 & Supp.2006); Minn.Stat. Ann. § 590.01 (West 2000 & Supp. 2006); Mo. Ann. Stat. § 547.035 (West 2002 & Supp.2006); Neb.Rev. Stat. § 29–4120 (1995 & Supp.2004); N .J. Stat. Ann. § 2A:84A–32a (West 1994 & Supp.2006); N.M. Stat. Ann. § 31–1A–2 (Michie 2005); N.C. Gen.Stat. §§ 15A–269 to –270 (2005); Okla. Stat. Ann. tit. 22, §§ 1371–1371.2 (West 2003 & Supp.2006); Or.Rev.Stat. §§ 138.255,

8–201 was enacted in Maryland in 2001, in line with a nation-wide trend to adopt postconviction DNA testing statutes designed to provide an avenue for the exoneration of the actually innocent. In 1994, New York was the first state to adopt a postconviction DNA testing statute. N.Y.Crim. Proc. Law § 440.30(1–a) (2006). Illinois soon followed in 1998. *See* 725 Ill. Comp. Stat. 5/116–3(c)(1) (2006) (permitting testing only if "the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of *actual innocence* . . ." (emphasis added)). Within three years after the enactment of § 8–201, Maryland was one of thirty-two states to have enacted statutes providing for some form of postconviction DNA testing.

Continuing this trend Congress enacted the Innocence Protection Act of 2004, Pub.L. 108–405, Title IV, § 401 *et seq.* (2004), which provides for postconviction DNA testing of prisoners convicted under federal and certain state laws. *See* 18 U.S.C. § 3600(a). Aside from the title, the Innocence Protection Act makes clear that its principal purpose is exoneration of the actually innocent by requiring an applicant for postconviction DNA testing to assert under penalties of perjury that the he or she is actually innocent of the conviction challenged through DNA testing. *See id.*

A broad approach to the future of DNA evidence and recommendations for handling postconviction DNA testing requests were addressed in a report by the National Commission on the Future of DNA Evidence, a commission created in 1998 by the National Institute of Justice ("NIJ")[5] at the

---

138.261 (2005); 42 Pa. Cons.Stat. Ann. § 9543.1 (West 1998 & Supp. 2006); R.I. Gen. Laws § 10–9.1–12 (1997 & Supp.2005); Tenn.Code Ann. § 40–30–301 to 40–30–313 (2003 & Supp.2005); Tex.Code Crim. Proc. Ann. art. 64.01 to 64.05 (Vernon 1979 & Supp.2006); Utah Code Ann. § 78–35a–301 (2002); Va.Code Ann. § 19.2–327.1 (2004 & Supp. 2006); Wash. Rev.Code § 10.73.170 (West 2000 & Supp.2001); Wis. Stat. Ann. § 974.07 (1998 & Supp.2005).

5. NIJ is a federal executive agency within the United States Department of Justice. *See* 42 U.S.C. § 3722(a) (establishing NIJ). NIJ's mission, as specified by statute, *inter alia,* is to "provide for and encourage

request of Attorney General Janet Reno. The National Commission on the Future of DNA Evidence was chaired by Chief Justice Shirley S. Abrahamson of the Wisconsin Supreme Court, and its members included a number of prominent forensic scientists, legal academics, law enforcement officials, elected public officials, and legal practitioners.

The report from the Commission, entitled POSTCONVICTION DNA TESTING: RECOMMENDATIONS FOR HANDLING REQUESTS, National Institute of Justice, National Commission on the Future of DNA Evidence, September 1999, http://www.ncjrs. org/pdffiles1/nij/177626.pdf ("1999 NIJ Report"), set out proposed guidelines for analyzing cases in which DNA evidence is presented. As a backdrop to our discussion, it is helpful to look briefly at some of the relevant recommendations contained within the report. The report groups requests for post-conviction DNA testing into five broad categories and sets out a framework for analyzing requests of DNA testing as follows:

"Category 1. These are cases in which biological evidence was collected and still exists. If the evidence is subjected to DNA testing or retesting, exclusionary results will exonerate the petitioner. In these cases, prosecutors and defense counsel should concur on the need for DNA testing.

Category 2. These are cases in which biological evidence was collected and still exists. If the evidence is subjected to DNA testing or retesting, exclusionary results would support the petitioner's claim of innocence, but reasonable persons might disagree as to whether the results are exonerative. The prosecutor and defense counsel may not agree on whether an exclusion would amount to an exoneration or would merely constitute helpful evidence.

Category 3. These are cases in which biological evidence was collected and still exists. If the evidence is subjected to DNA testing or retesting, favorable results will be inconclu-

---

research and demonstration efforts for the purpose of . . . improving Federal, State, and local criminal justice systems and related aspects of the civil justice system . . ." 42 U.S.C. § 3721(1).

sive. Future developments may cause such a case to be reassigned to a different category.

Category 4. These are cases in which biological evidence was never collected, or cannot be found despite all efforts, or was destroyed, or was preserved in such a way that it cannot be tested. In such a case, postconviction relief on the basis of DNA testing is not possible.

Category 5. These are cases in which a request for DNA testing is frivolous. In these cases, prosecutors and defense counsel should generally agree that no testing is warranted."

*Id.* at xiii-xiv. The Commission recognized that "[f]inding the evidence is the most difficult part of the process," *id.* at 45, and cautioned prosecutors against concluding too hastily that evidence sought by an inmate no longer exists. The report notes that "[m]any times all parties believe that the evidence has been destroyed, when in fact it has not." *Id.* The report states as follows:

"If, from initial contact with the investigating officer or review of case files, it appears that evidence suitable for DNA analysis was never collected, or has since been destroyed, it may prove impossible to continue with the rest of this guideline. . . . However, *no final decision or notification should be made until it has been carefully verified that evidence did not or does not still exist.*"

*Id.* at 36 (emphasis added).

The report recommends that the searcher for evidence should check the most likely places where the evidence may be found, and suggests the following locations:

"Police department evidence or property rooms. Evidence is often found here if the evidence was never tested or it was sent to the State crime laboratory, which then returned it.

Prosecutor's office. Evidence is often found here when it has been introduced at trial.

State and local crime laboratories will often retain slides or other pieces of evidence after conducting testing. Labora-

tories will usually return to the police department the clothing and vaginal swabs that are introduced as exhibits at trial.

Hospitals, clinics, or doctors' offices where sexual assault kits are prepared.

Defense investigators.

Courthouse property/evidence rooms.

Offices of defense counsel in jurisdictions that require parties to preserve exhibits produced at trial.

Independent crime laboratories.

Clerks of court.

Court reporters."

*Id.* at 46.

## IV.

We address first the issue of whether the Circuit Court erred in summarily dismissing appellant's petition for postconviction DNA testing. We hold that the court erred in dismissing the petition without giving appellant an opportunity to respond to the State's assertion that the evidence at issue no longer was in its possession.

Subsections (b), (c), and (d) of § 8–201, which address the prerequisites for entering a DNA testing order, provide as follows:

"(b) *Filing of petition.*—Notwithstanding any other law governing postconviction relief, a person who is convicted of a violation of § 2–201, § 2–204, § 2–207, or §§ 3–303 through 3–306 of the Criminal Law Article may file a petition for DNA testing of scientific identification evidence that the State possesses as provided in subsection (i) of this section and that is related to the judgment of conviction.

(c) *Findings requiring DNA testing.*—Subject to subsection (d) of this section, a court shall order DNA testing if the court finds that:

(1) a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or

mitigating evidence relevant to a claim of wrongful conviction or sentencing; and

(2) the requested DNA test employs a method of testing generally accepted within the relevant scientific community.

(d) *Notification of petition; response.—*

(1) A petitioner shall notify the State in writing of the filing of a petition under this section.

(2) The State may file a response to the petition within 15 days after notice of the filing or within the time that the court orders."

None of these subsections address expressly the procedures which must be followed when the State represents that the evidence no longer exists, or where there is a factual dispute over the existence of evidence a petitioner seeks to have tested. Furthermore, no provision in the Maryland Rules applies explicitly to proceedings under § 8–201.

The Maryland statute mandates that the State shall preserve scientific identification evidence that the State has reason to know contains DNA material and is secured in connection with a conviction under § 2–201, § 2–204, § 2–207 or §§ 3–303 through 3–306 of the Criminal Law Article.[6] § 8–201(i). The statute, as drafted, presumes that the evidence a petitioner requests to be tested in fact exists, and does not, on its face, contemplate circumstances where the evidence has been destroyed before the adoption of the statute, or where there is a factual dispute over the existence of DNA testing evidence. *See* § 8–201(b).

The question we must address is whether Blake was entitled to notice of the State's motion to dismiss his petition for DNA testing on the grounds that the evidence did not then exist, and, whether he was entitled to an opportunity to

---

**6.** Section 8–201(j)(1) sets out the procedure that the State must follow to dispose of scientific evidence before the expiration of the time period described in the statute.

respond before the Circuit Court summarily dismissed his petition.[7]

■■■■ We look first to the language of § 8–201. We apply the well settled rules of statutory construction in interpreting the statute before us. The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature. *See Oakland v. Mountain Lake,* 392 Md. 301, 316, 896 A.2d 1036, 1045 (2006). In ascertaining legislative intent, we first examine the plain language of the statute, and if the plain language of the statute is unambiguous and consistent with the statute's apparent purpose, we give effect to the statute as it is written. *See Mackey v. Compass,* 391 Md. 117, 141, 892 A.2d 479, 493 (2006). If the language of the statute is ambiguous, we resolve the ambiguity in light of the legislative intent, considering the legislative history, case law, and statutory purpose. *See Comptroller v. Phillips,* 384 Md. 583, 591, 865 A.2d 590, 594 (2005). We consider both the ordinary meaning of the language of the statute and how that language relates to the overall meaning, setting, and purpose of the act. *Deville v. State,* 383 Md. 217, 223, 858 A.2d 484, 487 (2004). We avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense. *Gwin v. MVA,* 385 Md. 440, 462, 869 A.2d 822, 835 (2005). We construe a statute as a whole so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory. *Moore v. State,* 388 Md. 446, 453, 879 A.2d 1111, 1115 (2005).

Section 8–201 is silent with respect to hearings upon the filing of a petition requesting DNA testing.[8] In addition, this

---

7. Whether Blake's petition is sufficient to entitle him to DNA testing is not before us.

8. A hearing is required explicitly under § 8–201(j)(4). In those instances where the State gives notice that it wishes to dispose of scientific identification evidence before the expiration of the time period set out in the statute, and a person files written objections to the State's notice, § 8–201(j)(4) states that "the court shall hold a hearing on the proposed disposition of the evidence...."

Other states provides explicitly for a hearing upon the filing of the petition requesting testing. *See, e.g.,* Cal.Penal Code § 1405(e) (West

Court has not adopted rules implementing the statute, as have some other states.[9] The legislative history offers no help

2000 & Supp.2006) (stating that a "court, in its discretion, may order a hearing on the motion"); Ga.Code. Ann. § 5–5–41(c)(6) (1995 & Supp. 2006) (requiring a hearing if the petition for postconviction DNA testing is facially sufficient, and providing that "[t]he petitioner and the state may present evidence by sworn and notarized affidavits or testimony"); Haw.Rev.Stat. § 844D–122 (1993 & Supp.2005) (requiring a hearing on a motion for postconviction DNA testing unless the motion is "patently frivolous because it is without a trace of support either in the record or in any materials submitted with the motion"); Ind.Code Ann. § 35–38–7–7 (West 2006) (a court "may, in its discretion, order a hearing on the petition"); Mo. Ann. Stat. § 547.035(6), (8) (West 2002 & Supp.2006) (requiring a hearing on a motion unless "the files and records of the case conclusively show that the movant is not entitled to relief"); Neb. Rev. Stat § 29–4120(5) (1995 & Supp.2004) (stating that "[u]pon consideration of affidavits or after a hearing, the court shall order DNA testing pursuant to a motion"); N.J. Stat. Ann. § 2A:84A–32a(a)(2)(b) (West 1994 & Supp.2006) (stating that at its discretion, the court "may order a hearing on the motion"); N.Y.Crim. Proc. § 440.30(5) (2006) (setting forth circumstances requiring a hearing and those where court may summarily grant or deny the motion); Ohio Rev.Code Ann. § 2953.73(D) (West 2006) (stating that the "court is not required to conduct an evidentiary hearing in conducting its review of, and in making its determination as to whether to accept or reject, the application"); 42 Pa. Cons.Stat. Ann. § 9543.1(f)(2) (West 1998 & Supp.2006) (noting that upon receipt of a petition "the court shall consider the petition along with any answer filed by the Commonwealth and shall conduct a hearing thereon"); R.I. Gen. Laws § 10–9.1–12(a), (b) (1997 & Supp.2005) (noting that mandatory and permissive DNA testing is to be considered by court "[a]fter notice to the prosecution and a hearing"); Tenn.Code Ann. § 40–30–312 (2003 & Supp.2005) (noting that if DNA analysis is favorable to a petitioner "the court shall order a hearing, notwithstanding any provisions of law or rule of court that would bar such a hearing as untimely"); Tex.Code Crim. Proc. Ann. art. 64.04 (Vernon 1979 & Supp.2006) (stating that after examining DNA test results, "the convicting court shall hold a hearing and make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted"); Utah Code Ann. § 78–35a–303(1)(b) (2002) (noting that if a DNA test is favorable, the "state may stipulate to the conviction being vacated, or may request a hearing"); Va.Code Ann. § 19.2–327.1(D) (2004 & Supp.2006) (requiring the court to set forth findings specifically as to each statutory prerequisite for DNA testing after a hearing on the motion); Wis. Stat. Ann. § 974.07(10)(a) (1998 & Supp.2005) (stating that if DNA tests support movant's claim, "the court shall schedule a hearing to determine the appropriate relief to be granted").

**9.** For example, Florida Rule of Criminal Procedure 3.853 provides that

either.[10]

a motion for postconviction DNA testing must include, among other things, "a statement that the movant is innocent and how the DNA testing requested by the motion will exonerate the movant of the crime for which the movant was sentenced, or a statement how the DNA testing will mitigate the sentence received by the movant for that crime." Fla. R.Crim. Proc. 3.853(b)(3). The rule also provides that the court shall make the following findings when ruling on the motion:

"(A) Whether it has been shown that physical evidence that may contain DNA still exists.

(B) Whether the results of DNA testing of that physical evidence likely would be admissible at trial and whether there exists reliable proof to establish that the evidence containing the tested DNA is authentic and would be admissible at a future hearing.

(C) Whether there is a reasonable probability that the movant would have been acquitted or would have received a lesser sentence if the DNA evidence had been admitted at trial."

Fla. R.Crim. Proc. 3.853(c)(5).

10. Section 8–201 was enacted originally in 2001. *See* 2001 Md. Laws, Chap. 418, S.B. 694. It was amended subsequently in 2002, 2003, and 2004. *See* 2002 Md. Laws, Chaps. 213 § 6, 465; 2003 Md. Laws, Chap. 240; 2004 Md. Laws, Chap. 25. Our review of the relevant bill files reveals nothing dispositive on the issue before us. The materials in the bill file for Senate Bill 694 of 2001 do not indicate any particular concern on the part of the General Assembly with the procedure a circuit court must follow when either the State represents that the evidence does not exist, or there is a dispute over the existence of evidence that a petitioner has requested be subjected to DNA testing. The only explicit discussion of procedural issues in the materials in the bill file for S.B. 694 is found in a letter from the Maryland Judicial Conference to the Senate Judicial Proceedings Committee. In this letter, the Maryland Judicial Conference expressed concern over "the impact on caseload given the number of motions that can be anticipated," and also noted that "Senate Bill 694 covers procedural details that do not need to be set forth in statute, such as service of a copy on the opposing side." Letter from the Legislative Committee of the Maryland Judicial Conference to the Senate Judicial Proceedings Committee, February 27, 2001. These comments shed little if any light on the issue before us.

The legislative history of the subsequent alterations of § 8–201 has no bearing on the issue before us either. The 2002 changes to § 8–201 principally concerned the obligations of the State to retain evidence, expanding the State's obligation to do so. *See* 2002 Md. Laws chap. 465 (amending § 8–201(i)). The 2004 changes were merely technical corrections. *See* 2004 Md. Laws chap. 25.

The 2003 changes to § 8–201 were more extensive, but none addressed the procedural issue before us. *See* 2003 Md. Laws, chap. 240, S.B. 363. Chapter 240 rewrote § 8–201(c) substantially, changing the findings that a circuit court must make before ordering DNA testing,

We turn to the statute and conclude that the court erred in several respects. First, the court should not have summarily dismissed the petition for testing before Blake had an opportunity to respond to the State's motion to dismiss. Second, the court should not have dismissed the petition based merely on the memorandum before it stating that the evidence no longer existed. Inasmuch as the statute requires that the State preserve scientific evidence, Blake was entitled to know, if such could be determined, if the evidence was destroyed before or after the enactment of the statute. Third, because the evidence has been in the custody of the State, the State has the burden of establishing that it no longer exists. An unsworn memorandum, stating that the State merely requested the police to look in the evidence control unit, is insufficient to establish this critical fact. Finally, the court should make some findings of fact and should set forth the underlying reasons when it dismisses a petition for testing.[11]

---

and also amending subsection (e), giving a circuit court more discretion to enter related orders when it orders DNA testing. Chapter 240 also amended subsections (i) and (j), altering the procedures that must be followed when the State seeks to dispose of scientific identification evidence prior to the expiration of a sentence, and specifically requiring a hearing if the State seeks to do so. Finally, Chap. 240 amended subsection (j) to provide for a direct appeal to this Court from orders entered under subsections (c), (h)(2), and (j)(4).

11. Section 8–201(c) is captioned "Findings requiring DNA testing." Although the statute does not, unlike many other states' postconviction DNA testing statutes, require a finding that the evidence exists and is available for testing, the statute does require a finding that "a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing" and that "the requested DNA test employs a method of testing generally accepted within the relevant scientific community." § 8–201(c)(1–2). In addition, § 8–201(j), Disposal of evidence; notification; hearing; appeals, provides for a direct appeal to this Court. § 8–201(j)(6). Findings of fact facilitate appellate review.

Some state statutes or rules require express findings. *See e.g.,* Fla. Stat. Ann. § 3.853(c)(5) (West 2006); Haw.Rev.Stat. § 844D–132(d) (1993 & Supp.2005); Me.Rev.Stat. Ann. tit. 15, § 2138(10) (2003); Mich. Comp. Laws Ann. § 770.16(4) (West 2000 & Supp.2006); Mo. Ann. Stat. § 547.035(8) (West 2002 & Supp.2006); N.Y.Crim. Proc. Law § 440.30(1)(a) (Consol. 1996 & Supp.2006).

 We conclude that the Circuit Court erred in dismissing the petition without, at a minimum, giving appellant an opportunity to respond to the State's allegation that the DNA testing evidence was no longer in its possession. Fundamental fairness requires that a petitioner be given an opportunity to respond and to challenge the State's representation. When it is the State's position that the evidence sought to be tested no longer exists, the circuit court may not summarily dismiss the petition requesting DNA testing. The court must give a petitioner notice of and an opportunity to respond to the State's allegation. A petitioner has a right to notice and opportunity to contest the State's representation that the evidence is unavailable.

The evidence preservation provisions in § 8–201 support our conclusion. Section 8–201(i) provides, in relevant part, as follows:

"(1) The State shall preserve scientific identification evidence that:

(i) the State has reason to know contains DNA material; and

(ii) is secured in connection with an offense described in subsection (b) of this section.

(2) The State shall preserve scientific identification evidence described in paragraph (1) of this subsection for the time of the sentence, including any consecutive sentence imposed in connection with the offense."

Section 8–201(j), although it permits the State to dispose of evidence it would otherwise be required to retain as required by § 8–201(i), only allows the State to do so if it "notifies ... the person who is incarcerated in connection with the case," any attorney of record for such a person, and the public defender. § 8–201(j)(1). Once notice has been provided, the inmate and the other parties have 120 days to file an objection to the proposed disposal of the evidence, and are then entitled to a hearing as to whether the proposed disposal is appropriate. § 8–201(j)(3)–(4).

The Maryland Rules that address notice and opportunity to be heard in other types of proceedings also provide support for our holding. The rules allow the party opposing a motion, at a minimum, to respond, particularly to a dispositive motion. *See* Md. Rule 2–311(b) (applicable to civil actions in circuit court, providing an opportunity for "a party against whom a motion is directed" to file a response); Md. Rule 2–311(e)–(f) (in a civil case, a court may not grant a motion for judgment notwithstanding the verdict, for a new trial, or a motion to amend the judgment without a hearing on the motion, and may not rule on a dispositive motion without a hearing if the opposing party has requested a hearing); Md. Rule 4–252(f) (applying to motions filed in criminal proceedings in circuit court, and providing the opposing party an opportunity to respond); Md. Rule 4–406 (applicable in proceedings under the Uniform Post Conviction Procedure Act, and requiring a hearing on a petition under the Act). The pervasive philosophy in our Rules of Procedure that a party is entitled to notice should apply to dispositive motions under § 8–201.[12]

Due process considerations bear also on our conclusion that appellant was entitled to an opportunity to respond to the State's motion. Appellant was afforded no notice of the

---

**12.** Writing for the Court in *Phillips v. Venker*, 316 Md. 212, 557 A.2d 1338 (1989), Judge John F. McAuliffe discussed due process concerns and the types of hearings which may be required. He noted as follows:

"In some instances, even a temporary deprivation of a property interest followed by a right to a full hearing has been held to violate due process unless a pretermination hearing is provided. In other circumstances, a 'paper hearing,' i.e. the right to be 'heard' through the filing of documents and written arguments, may suffice. As the Supreme Court has said, '[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Rather, it is 'flexible and calls for such procedural protections as the particular situation demands.' "

*Id.* at 218, 557 A.2d at 1341 (internal citations omitted).

Having held that the Circuit Court erred by failing to give appellant an opportunity to respond to the State's motion to dismiss the petition, we do not reach the issue of whether, and if so under what circumstances, a § 8–201 petitioner is entitled to an oral hearing. The type of hearing to which appellant may be entitled in the instant matter will depend upon the particular circumstances.

State's motion to dismiss his petition, and no notice of the Circuit Court's intent to dismiss his petition based solely on the representations in the State's motion. Appellant had a liberty interest at stake, and was, at a minimum, entitled to notice of the impending action, even if he did not have the right to an oral hearing. *See Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). Consequently, the failure of the Circuit Court to provide *any* notice to appellant that the State had filed the motion to dismiss and that the court intended to rule upon it, and its dismissal of the petition without affording appellant any opportunity to respond, violated his rights to due process.

This Court addressed a party's due process right to notice and opportunity to be heard prior to a court ruling on a dispositive motion in *Phillips v. Venker*, 316 Md. 212, 557 A.2d 1338 (1989). While a summary judgment motion by the defendants in a negligence action was pending before the trial court, the judge scheduled a telephone conference call between the parties. *Id.* at 213–15, 557 A.2d at 1338–39. The stated purpose of the conference call was to discuss plaintiffs' request for a continuance of a hearing that was scheduled on the summary judgment motion. *Id.* at 215, 557 A.2d at 1339. Nonetheless, after the call had begun, the trial judge decided to conduct the summary judgment hearing during the conference call, even though plaintiffs' counsel told him that he did not have his file at hand and had not reviewed his file prior to the call. *Id.* After allowing plaintiffs' counsel to retrieve his case file, the trial judge heard approximately twenty to twenty-five minutes of argument from the parties on the summary judgment motion. *Id.* The judge then granted the defendants' motion. *Id.* We held that the trial court violated the plaintiffs' due process rights by failing to give them adequate notice that it intended to conduct the hearing on the summary judgment motion during the conference call and that "they were entitled to adequate notice of the time, place, and nature of that hearing, so that they could adequately prepare." *Id.* at 222, 557 A.2d at 1343 (internal citations omitted).

Other courts have concluded that due process rights are implicated when courts make dispositive rulings on postconviction DNA testing requests without a hearing.[13] In *People v. Sanchez*, the court held that the inmate's due process rights were violated when a trial court dismissed a petition for postconviction DNA testing on the basis of the State's allegation in an *ex parte* hearing that it no longer possessed the evidence the petitioner sought to be tested. *People v. Sanchez*, 363 Ill.App.3d 470, 299 Ill.Dec. 894, 842 N.E.2d 1246, 1254 (2006). At a purported status conference, the State advised the court that it could not locate the testing evidence. *Id.* at 1253. Upon being so informed by the State, the trial court dismissed the testing petition even though the issue of the existence of the evidence had not been previously raised by the State, and despite the absence of the defendant from the hearing. *Id.* at 1253–54. The *Sanchez* court reasoned that the trial court's dismissal under these circumstances denied the defendant procedural due process "[b]ecause [he] had no notice or opportunity to contest the State's representations, and because the State's representations formed the basis of the trial court's denial." *Id.* at 1254.

We address next the State's representation in this case that the evidence does not exist. Merely stating in an unsworn, unverified memorandum directed to Major Frederick Taber from Sgt. Charles Morgan, that "[t]he Evidence Control Section was checked by the undersigned, and there was no Evidence found for that case" is insufficient.

Although the statute is silent as to which party has the burden to establish whether the evidence still exists and is

---

13. Several Florida intermediate appellate courts have reversed trial court dismissals of postconviction DNA testing petitions where a petitioner was not afforded an opportunity to respond to allegations by the State that testing evidence no longer existed. *See Carter v. State*, 913 So.2d 701, 702 (Fla.Dist.Ct.App.2005) (holding that, under Florida postconviction DNA testing statute, "[w]here a defendant claims that DNA evidence exists, but the state denies the claim, a factual dispute results and an evidentiary hearing is required"); *Merson v. State*, 876 So.2d 641, 642 (Fla.Dist.Ct.App.2004); *Marsh v. State*, 852 So.2d 945, 946 (Fla.Dist.Ct.App.2003).

available for testing, we conclude that the burden is on the State to establish that it is no longer in possession of the DNA testing evidence requested by a petitioner when it seeks to have the court dismiss a DNA testing petition on such grounds. It is only logical that this burden is upon the State, as the State gathered the evidence and was the custodian of the evidence. The information as to the location of the evidence and the manner of its destruction would not be within the knowledge of an inmate.

This approach is supported by relevant authority from other jurisdictions. In *People v. Pitts*, 4 N.Y.3d 303, 795 N.Y.S.2d 151, 828 N.E.2d 67 (2005), the New York Court of Appeals addressed a similar issue that arose under New York's post-conviction DNA testing statute. *See* N.Y.Crim. Proc. § 440.30(2006). In *Pitts*, the court reversed the Appellate Division holding that the New York postconviction DNA test-ing statute placed the burden on the defendant to establish that the evidence the defendant asked to be tested still exists. *Id.* at 71–72. The court held that the lower court "erred in interpreting [the statute] . . . to place on defendants the burden to establish the location and status of the evidence they seek to be tested." *Id.* The intermediate appellate court erred, the Court of Appeals reasoned, because "it is the People, as the gatekeeper of the evidence, who must show what evidence exists and whether the evidence is available for testing." *Id.* at 72. *See also People v. Travis*, 329 Ill.App.3d 280, 264 Ill.Dec. 785, 771 N.E.2d 489, 493 (2002) (observing that when there is a factual dispute as to whether evidence has been subjected to a proper chain of custody, as required by statute, the trial court should permit limited discovery on this issue, because "[i]t asks too much to require petitioning defendant[s] in these cases to plead and prove proper chain of custody at the outset, for the evidence at issue will undoubted-ly have been within the safekeeping of the State").

As the 1999 NIJ Report suggests, when an inmate files a petition for postconviction DNA testing, the State should make an extensive search for the evidence. *See* 1999 NIJ Report at 36. Simply asking a police officer to check an

evidence unit locker is not sufficient. There are many other likely places where the evidence may have been stored. The report urges prosecutors to search for evidence in nontraditional sources, and to "[c]onsider the possibility of testing items not traditionally thought to contain DNA evidence, such as slides taken by medical personnel during sexual assault examinations and paraffin-imbedded tissue samples taken at the time of an autopsy." *Id.* The Report cautions prosecutors against concluding too hastily that evidence that an inmate has asked to be tested no longer exists. *Id.* (noting that "no final decision or notification should be made until it has been carefully verified that evidence did not or does not still exist").

The motion to dismiss in this case is analogous to a summary judgment motion in a civil case. At a minimum, a motion to dismiss a postconviction DNA testing petition on grounds that testing evidence does not exist should be supported by an affidavit before the court may grant the motion.

This conclusion is supported by authority from other jurisdictions. For instance, in *Pitts,* discussed *supra,* the New York Court of Appeals reversed an intermediate appellate court ruling affirming a trial court's dismissal of a motion for postconviction DNA testing. *Pitts,* 4 N.Y.3d 303, 795 N.Y.S.2d 151, 828 N.E.2d 67, 72. There, in denying a motion for postconviction DNA testing, the court held that it was improper for the trial court to rely "merely on the People's conclusory assertion that the evidence in question no longer exists." *Id.* Florida courts have held consistently that a dispute over whether testing evidence exists creates a factual dispute that must be resolved in an evidentiary hearing. *See, e.g., Carter v. State,* 913 So.2d 701, 702–03 (Fla.Dist.Ct.App. 2005).

Postconviction DNA testing statutes in some states require a court entertaining a testing petition to either conduct an evidentiary hearing or to consider affidavits submitted to the court prior to deciding whether to order DNA testing. For example, Nebraska's postconviction DNA testing statute permits postconviction DNA testing of "any biological material"

that, among other conditions, "[i]s in the actual or constructive possession or control of the state or is in the possession or control of others under circumstances likely to safeguard the integrity of the biological material's original physical composition." Neb. Rev. Stat § 29–4120(1)(b) (1995 & Supp.2004). The statute provides as follows:

> "*Upon consideration of affidavits or after a hearing,* the court shall order DNA testing pursuant to a motion filed under subsection (1) of this section upon a determination that such testing was effectively not available at the time of trial, that the biological material has been retained under circumstances likely to safeguard the integrity of its original physical composition, and that such testing may produce noncumulative, exculpatory evidence relevant to the claim that the person was wrongfully convicted or sentenced."

Neb. Rev. Stat § 29–4120(5) (1995 & Supp.2004) (emphasis added). Postconviction DNA testing statutes in other states contain similar provisions. *See supra* note 8.

## V.

For purposes of guidance on remand, we now turn to the second issue—whether an indigent has any constitutional or statutory right to appointed counsel at State expense to pursue a petition for postconviction DNA testing under § 8–201. We hold that there is no such right to appointed counsel under § 8–201, either statutory or constitutional.

There is no federal constitutional right to counsel in a postconviction collateral attack on a criminal conviction. *See Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Trimble v. State,* 157 Md.App. 73, 78, 849 A.2d 83, 85–86 (2004) (citing *Finley* for the proposition that a defendant has no right to appointed counsel "when attacking a conviction that has long since become final upon exhaustion of the appellate process"). *See also State v. Poe,* 271 Neb. 858, 717 N.W.2d 463, 469 (2006) (stating that because Nebraska's postconviction DNA testing act enables petitioners to engage in "a collateral attack on a conviction ... there is not a

constitutional right to appointment of counsel"); *People v. Love*, 312 Ill.App.3d 424, 245 Ill.Dec. 233, 727 N.E.2d 680, 683 (2000) (noting that because the constitutional right to counsel applies only during a defendant's trial and first appeal of right, where the "defendant moved for forensic testing long after the resolution of his trial and first appeal of right ... he had no constitutional right to counsel on his motion").

Appellant fares no better under the Maryland Constitution. The Maryland Constitution has not hitherto been interpreted to provide a right to counsel in collateral proceedings challenging a criminal conviction. Article 21 of the Maryland Declaration of Rights provides that "in all criminal prosecutions, every man hath a right ... to be allowed counsel ..." This Court has held that Article 21 of the Maryland Declaration of Rights does not afford any right to counsel which is more expansive than that afforded by the Sixth Amendment. *See State v. Campbell*, 385 Md. 616, 626 n. 3, 870 A.2d 217, 223 n. 3 (2005) (stating that the right to counsel provisions in Article 21 are in *para materia* with Sixth Amendment); *State v. Tichnell*, 306 Md. 428, 440, 509 A.2d 1179, 1185 (1986) (holding that "[t]here is no distinction between the right to counsel guaranteed by the Sixth Amendment and Art. 21 of the Maryland Declaration of Rights").

Any right to counsel appellant may have under the DNA testing statute must be found in § 8–201. Appellant concedes that § 8–201, the section under which he filed his petition for DNA testing, does not provide explicitly for assistance of counsel. His sole argument is that as an indigent, he is entitled to the appointment of counsel because of the scientific complexity of DNA evidence analysis and that the legal procedures authorized by § 8–201 are too difficult for a layman to navigate successfully.

The Court of Special Appeals considered a petitioner's right to counsel under the DNA testing statute in *Trimble v. State*, 157 Md.App. 73, 849 A.2d 83 (2004). The court held that no language in the Public Defender Act, Md.Code (1957, 2003 Repl.Vol.), Art. 27A or in § 8–201 extends the right to counsel

to indigent petitioners requesting postconviction DNA testing under Title 8, Subtitle 2 of the Criminal Procedure Article. *Trimble,* 157 Md.App. at 81, 849 A.2d at 87–88. We agree.

The Public Defender Act, Md.Code (1957, 2003 Repl.Vol., 2006 Cum.Supp.), Art. 27A § 1 *et seq.,* details the statutory obligations of the Office of the Public Defender to provide legal representation to indigent persons. In particular, Art. 27A § 4, Duty to Provide Legal Representation, provides in relevant part as follows:

"(b) *Included Proceedings.*—Legal representation shall be provided indigent defendants or parties in the following proceedings:

(1) Any criminal or juvenile proceeding constitutionally requiring the presence of counsel prior to presentment before a commissioner or judge;

(2) Criminal or juvenile proceedings, where the defendant is charged with a serious crime, before the District Court of Maryland, the various circuit courts within the State of Maryland, and the Court of Special Appeals;

(3) Postconviction proceedings, when the defendant has a right to counsel pursuant to Title 7 of the Criminal Procedure Article;

(4) Any other proceeding where possible incarceration pursuant to a judicial commitment of individuals in institutions of a public or private nature may result; and

(5) As to a parent, a hearing in connection with guardianship or adoption under Title 5, Subtitle 3, Part II or Part III of the Family Law Article."

Section 7–108 of the Uniform Post Conviction Procedure Act, Right to Counsel and Hearing, provides as follows:

"(a) *In general.*—Except as provided in subsection (b) of this section, a person is entitled to assistance of counsel and a hearing on a petition filed under this title.

(b) *Exceptions.*—

(1) If a person seeks to reopen a postconviction proceeding under § 7–104 of this subtitle, the court shall deter-

mine whether assistance from counsel or a hearing should be granted.

(2) If an appeal has been taken from the judgment of conviction to the Court of Special Appeals, until the judgment of conviction becomes final in the Court of Special Appeals, the court need not:

 (i) appoint counsel;

 (ii) hold a hearing; or

 (iii) act on the petition."

It is apparent from the plain language of Art. 27A § 4(b) and the related statutory provisions that the Public Defender Act does not create a statutory right to appointed counsel for proceedings under § 8–201. The only provision in Art 27A § 4 arguably applicable is subsection (b)(3), requiring the provision of counsel in postconviction proceedings "when the defendant has a right to counsel pursuant to Title 7 of the Criminal Procedure Article." Section 7–108(a) limits the right to counsel granted by it to petitions "filed under this title," *i.e.*, petitions filed under Title 7 of the Criminal Procedure Article. The right to file a petition for postconviction DNA testing, however, is granted by § 8–201(b), located in Title 8 of the Criminal Procedure Article, not Title 7. Therefore, we conclude that the Public Defender Act does not provide any right to appointed counsel to pursue a petition for postconviction DNA testing under § 8–201.

It is clear that nothing in § 8–201 grants a petitioner a right to appointed counsel to pursue a petition for postconviction DNA testing. However appealing appellant's arguments are from a policy perspective, they are unavailing with respect to the issue of statutory construction before us. As we have often stated, the cardinal rule of statutory construction is to ascertain and give effect to the intention of the Legislature. *See Mackey*, 391 Md. at 141, 892 A.2d at 493; *Melton v. State*, 379 Md. 471, 476, 842 A.2d 743, 746 (2004). When the language is plain and unambiguous, we give effect to that

statute as written, and neither add nor delete words. *Melton*, 379 Md. at 477, 842 A.2d at 746. Appellant's remedy is with the Legislature, not with this Court.[14]

## VI.

Appellant's request that we order the Circuit Court to correct his sentence is not properly before this Court, and we therefore decline to reach it. A petition for DNA

---

**14.** In contrast to § 8–201, many postconviction DNA testing statutes in other jurisdictions provide, in some form, for assistance of counsel. Congress enacted the federal Innocence Protection Act of 2004, Pub.L. 108–405, Title IV, § 401 *et seq.* (2004), providing for postconviction DNA testing for prisoners convicted under federal law and certain state law convictions. *See* 18 U.S.C. § 3600(a). The Innocence Protection Act contains the following provision relating the appointment of counsel for indigents:

"Appointment of counsel.—The court may appoint counsel for an indigent applicant under this section in the same manner as in a proceeding under section 3006A(a)(2)(B)."

18 U.S.C. § 3600(b)(3). 18 U.S.C. § 3006A(a)(2)(B), in turn, provides for appointment of counsel for federal habeas petitioners when a federal court or federal magistrate judge "determines that the interests of justice so require."

In addition, many state postconviction DNA testing statutes provide explicitly for assistance of counsel, either as a matter of right or at the discretion of the court. *See* Ariz.Rev.Stat. Ann. § 13–4240(E) (2001) (discretionary); Cal.Penal Code § 1405(b)(3) (West 2000 & Supp.2006) (mandatory if counsel has not previously been appointed under statute, otherwise discretionary); D.C.Code § 22–4133(e)(2) (2001 & Supp. 2006) (discretionary); Fla. R.Crim. P. 3.853(c)(4) (discretionary if hearing is held); Haw.Rev.Stat. § 844D–124 (1998 & Supp.2005) (discretionary at any time in proceedings, mandatory if a pro se movant shows "that DNA testing may be material to the defendant's claim of wrongful conviction"); Ind.Code Ann. § 35–38–7–11 (LexisNexis 1998 & Supp. 2006) (discretionary); Kan. Stat. Ann. § 21–2512(e) (1995 & Supp. 2002) (discretionary); Me.Rev.Stat. Ann. tit. 15, § 2138(3) (2003 & Supp.2005); Mo. Ann. Stat. § 547.035(6) (West 2002 & Supp.2006) (mandatory if court orders hearing); N.J. Stat. Ann. § 2A:84A–32a(c) (West 1994 & Supp.2006) (mandatory); N.M. Stat. Ann. § 31–1A–2(D) (LexisNexis 2006) (mandatory, but only if petitioner makes initial showing required by subsection (C) of statute); N.C. Gen.Stat. § 15A–269(c) (2005) (mandatory); Tenn.Code Ann. § 40–30–307 (2003) (discretionary); Tex.Code Crim. Proc. Ann. art. 64.01(c) (Vernon 1979 & Supp.2006) (mandatory); Va.Code Ann. § 19.2–327.1(H) (2004 & Supp. 2006); W. Va.Code Ann. § 15–2B–14(b) (LexisNexis 2004 & Supp. 2006) (mandatory); Wis. Stat. Ann. § 974.07(11) (West 1998 & Supp. 2005).

testing under § 8–201 is plainly an inappropriate vehicle to raise an illegal sentence issue. *See* § 8–201(c), (e); *Thompson v. State,* 395 Md. 240, 247–48, 909 A.2d 1035 (2006) (holding that a circuit court, in entering a DNA testing order under § 8–201(c), is only empowered by § 8–201(e) to enter further orders relating to the DNA testing process). We reject appellant's contention that Md. Rule 4–345(a) gives us the power to order the Circuit Court to correct appellant's sentence if it is illegal. To be sure, Md. Rule 4–345(b) provides that "[t]he court may correct an illegal sentence at any time." Nonetheless, "the court" as used in the Rule refers to the trial court that entered the sentence, not this Court. *See Chertkov v. State,* 335 Md. 161, 170, 642 A.2d 232, 236–37 (1994) (explaining that Rule 4–345 expanded the traditional inherent power of a trial court to modify its own judgment in criminal cases); *State v. Ward,* 31 Md.App. 68, 76, 354 A.2d 834, 839 (1976) (interpreting predecessor of Rule 4–345(a), and holding that "[t]he 'court' which is authorized by [the Rule] to correct an illegal sentence at any time is the trial court"). In addition, appellant did not raise this issue below, and on this basis alone, we find that it is not properly before us.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.*