**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2627

September Term, 2012

_____

DAMERON SMALLWOOD

v.

STATE OF MARYLAND

Meredith,
Leahy,
Sonner, Andrew L.
        (Retired, specially assigned),

JJ.

Opinion by Meredith, J.

Filed: February 24, 2016

In 2009, the Maryland General Assembly enacted a statute that permits a convicted person to file a petition for a "writ of actual innocence" based upon a claim of newly discovered evidence. Maryland Code (2001, 2008 Repl. Vol., 2009 Supp.), Criminal Procedure Article ("CP"), § 8-301. In 2011, the Court of Appeals of Maryland adopted Maryland Rule 4-332, which provides, in pertinent part, that each petition for writ of actual innocence "shall state: . . . that the conviction sought to be vacated is based on an offense that the petitioner did not commit." Rule 4-332(d)(9). Dameron Smallwood, appellant, urges us to hold that the Court of Appeals erred in construing CP § 8-301 to limit the availability of a writ of actual innocence to persons who assert that they did not commit the offense of which they have been convicted. We are not persuaded that the Court of Appeals erred in its interpretation of CP § 8-301. We shall therefore affirm the ruling of the Circuit Court for Baltimore County denying Smallwood's application for writ of actual innocence.

## BACKGROUND

In 1985, Smallwood was convicted of committing a brutal murder. He was tried upon an agreed statement of facts. He does not dispute that, on the morning of October 22, 1984, when he was 15 years old, he knocked on the door of a stranger at an apartment complex in Baltimore County, and told the 76-year-old occupant that he had a package that she needed to sign for. When she opened the door, Smallwood stabbed her ten times in the chest and abdomen and arms. He then fled, and was observed disposing of items of clothing and a bloody, brown paper bag. The victim of the stabbing died later that day.

After Smallwood was indicted for first degree murder and related offenses, his attorneys moved for a reverse waiver to juvenile court. At the reverse waiver hearing, Smallwood's attorneys called a psychiatrist, a psychologist and a psychiatric social work expert to testify that it would be appropriate for Smallwood to be tried as a juvenile because he would be amenable to treatment if the reverse waiver was granted, and, in the view of these experts, it would be preferable to commit Smallwood to an institution rather than incarcerate him. None of the psychological experts expressed an opinion that Smallwood was not criminally responsible for the fatal stabbing of the victim. The circuit court denied the request to waive the case to the juvenile court.

Smallwood entered a plea of not guilty, but, agreed to a lengthy statement of facts, which included grisly details such as:

> Mrs. Gibson went to answer the door.   . . . The defendant was the person knocking on her door. With the door shut, Mrs. Gibson asked who was there and what they wanted. The defendant said that he had a package to deliver. She told him to leave the package outside her door. The defendant told her that she had to sign for the package.   . . . Believing what the defendant said, the victim began to open the door. The defendant pushed the door open and forcibly entered the apartment, pushing the victim back inside. Armed with a knife, the defendant stabbed Mrs. Gibson ten times. During the struggle with the defendant, Mrs. Gibson cried out to her daughter-in-law, [who was] still on the phone, "Barbara, call the police." Barbara Gibson heard the struggle and [heard] the defendant yell, "Bitch, son of a bitch." Lastly, she heard Mrs. Gibson cry, "Oh, my God."

Smallwood was found guilty of all counts, and was sentenced to imprisonment for life.

2

Twenty-five years later, a psychiatrist who had testified as a defense expert at the reverse waiver hearing in 1985 — Dr. Ellen McDaniel — indicated to Smallwood's attorneys that she was now willing to revise the opinions she had expressed at the reverse waiver hearing, and was now willing to testify that Smallwood was not criminally responsible for killing Mrs. Gibson in 1984. Smallwood's attorneys filed a petition for writ of actual innocence in which they asserted that Dr. McDaniel's revised opinion as to criminal responsibility was newly discovered evidence that would now support a plea of not criminally responsible, and, they posited, this newly discovered evidence created a substantial or significant possibility of a different result for Smallwood, namely, a verdict finding him guilty but not criminally responsible.[1]

---

[1]The Court of Appeals discussed the nature of a defense of "not criminally responsible" in *Treece v. State*, 313 Md. 665, 676 (1988):

> When the defense of not criminally responsible is asserted, along with a not guilty plea, the initial question is the defendant's guilt or innocence. If the verdict is guilty, the next step is the determination of criminal responsibility. If lack of responsibility is found, that is not an acquittal. **The result of "the successful interposition of a plea of insanity is not that an accused is to be found not guilty of the criminal act it was proved he had committed**, but that he shall not be punished therefor." [*Langworthy v. State,* 284 Md. 588, 598 (1979)].

> In short, the defendant who "successfully" pleads not criminally responsible is subject to the stigma of a criminal conviction, although he or she may not be subject to all of the consequences that would otherwise flow therefrom.

(Emphasis added; internal citations omitted.)

The Circuit Court for Baltimore County conducted an evidentiary hearing on Smallwood's petition for writ of actual innocence. The court received deposition testimony of Dr. McDaniel (who had passed away prior to the hearing), and the court heard testimony from a clinical psychiatrist called by the State who disputed the psychiatric basis for Dr. McDaniel's revised opinion. Smallwood did not argue that he was not the person who killed Mrs. Gibson.

The circuit court denied Smallwood's petition for writ of actual innocence for three independent reasons. First, the court ruled that a writ of actual innocence was not available to Smallwood because he "is not claiming, and cannot claim that he is actually innocent. Rather, he is maintaining that he is actually guilty, but not criminally responsible for the act of murder." After reviewing legislative history of CP § 8-301, the circuit court observed: "Nothing about the legislative history of the provision suggests that it was intended to include a claim made decades after a conviction that a defendant was guilty of the crime, but not criminally responsible for its commission."

Second, the circuit court ruled that, "even if it is determined that a Petition for Writ of Actual Innocence can be used by a defendant who is guilty [but not criminally responsible], it is also important to determine if Dr. McDaniel's new opinions constitute 'newly discovered evidence' within the meaning of Section 8-301." The circuit court concluded that the revised opinions would not constitute newly discovered evidence, noting: "There was no change between 1984 and the present in the *facts* of this case. No new or

4

different fact was unearthed or otherwise discovered suggesting that the Petitioner's trial was unfair in 1984."

Finally, the circuit court explained that, even if a revised expert's opinion might qualify as newly discovered evidence, the court found Dr. McDaniel's revised testimony to be entitled to "virtually no weight." The court elaborated on its analysis:

> Moreover, Dr. McDaniel failed utterly to convince the undersigned that she could not have made the same diagnoses in 1984 as she made in 2011; or that she could not have reached the same conclusion concerning the lack of criminal responsibility in 1984 as she purported to reach in 2011. She did not persuade the undersigned that the DSM-III contained material mistakes or errors in 1984 that, if changed, would have affected her opinion as to criminal responsibility in 1984. Her 2011 analysis was illogical, and her conclusions were unreliable as a matter of the application of ordinary common sense.
>
> * * *
>
> The Court is simply not convinced that Dr. McDaniel's new series of "opinions" constitute credible evidence which would form the basis for the proper granting of a new trial 26 years after the fact.

Smallwood noted a timely appeal from the circuit court's ruling.

## QUESTIONS PRESENTED

Appellant presents the following questions for our review:

> Did the lower court err in denying the petition for writ of actual innocence? Specifically,
>
> A.  Does § 8-301 of the Criminal Procedure Article contemplate relief for an individual who was not criminally responsible for committing the underlying offense?

5

B.     Does an expert's opinion about criminal responsibility, revised many years after trial, constitute "newly discovered evidence" under § 8-301?

C.     Does the revised expert opinion that Mr. Smallwood was not criminally responsible create a substantial or significant possibility that the result may have been different?

Because we answer "no" to sub-question A., we need not address the sub-questions B. and C. We will affirm the judgment of the Circuit Court for Baltimore County.

**DISCUSSION**

Smallwood makes no contention that his conviction was "based on an offense that [he] did not commit," as required by Rule 4-332(d)(9). But he asserts that CP § 8-301 contains no such prerequisite for seeking a writ of actual innocence. He states in his brief:

> Mr. Smallwood also acknowledges that Maryland Rule 4-332, which took effect after he filed his petition, requires a petitioner to assert "that the conviction sought to be vacated is based on an offense that [he] did not commit." Md. Rule 4-332(d)(9). The procedural requirements of the rule, however, cannot override the substance of § 8-301. *See* 38 Md. Reg. 476 (Apr. 8, 2011) (noting that Rule 4-332 implements § 8-301). *See also* Md. Rule 4-101 (explaining that the Rules in Title 4 govern procedure, not substance). Because the plain language of the statute does not require petitioner to allege or prove that he did not commit the underlying offense, Rule 4-332's requirement to the contrary is a nullity.

Smallwood is correct in his observation that CP § 8-301 does not specifically state that a writ of actual innocence is available only to a petitioner who claims factual innocence; the statute does not expressly mandate that a petition for a writ of actual innocence include

6

a statement asserting that the conviction was based upon an offense that the petitioner did not commit. CP § 8-301 provides, in pertinent part:

(a) **A person** charged by indictment or criminal information with a crime triable in circuit court and convicted of that crime **may**, at any time, **file a petition for writ of actual innocence in the circuit court for the county in which the conviction was imposed if the person claims that there is newly discovered evidence** that:

> (1) creates a substantial or significant possibility that the result may have been different, as that standard has been judicially determined; and

> (2) could not have been discovered in time to move for a new trial under Maryland Rule 4-331.

(b) **A petition filed under this section shall:**

> **(1) be in writing;**

> **(2) state in detail the grounds on which the petition is based;**

> **(3) describe the newly discovered evidence;**

> **(4) contain or be accompanied by a request for hearing if a hearing is sought; and**

> **(5) distinguish the newly discovered evidence claimed in the petition from any claims made in prior petitions.**

* * *

(f) (1) In ruling on a petition filed under this section, the court may set aside the verdict, resentence, grant a new trial, or correct the sentence, as the court considers appropriate.

(2) The court shall state the reasons for its ruling on the record.

7

(g) A petitioner in a proceeding under this section has the burden of proof.

(Emphasis added.)

Despite the absence of an express requirement in CP § 8-301 for the petitioner to claim factual innocence and include an averment that the conviction is based on an offense the petitioner did not commit, the appellate courts of Maryland have, on several occasions, interpreted the statute to include such a requirement. Even though Rule 4-332 was not formally adopted by the Court of Appeals until September 8, 2011, with an effective date of October 1, 2011 — *i.e.*, a few days after Smallwood filed his petition on August 29, 2011 — the Court of Appeals recognized in *Douglas v. State*, 423 Md. 156 (2011), that new Maryland Rule 4-332 "applies to actions commenced on or after [the effective] date, 'and, insofar as practicable, to all actions then pending[.]'" 423 Md. at 182 n.14 (quoting 38 Md. Reg. 1195 (September 23, 2011)).

But more important than any question regarding the direct applicability of the rule to Smallwood's petition is the precedent established by Rule 4-332 as a judicial interpretation of CP § 8-301 by the highest court of this State. As the Court of Appeals recently noted in *Bonilla v. State*, 433 Md. 1 (2015), "the Maryland Rules 'have the force of law.'" *Id*. at 7 (quoting *Dotson v. State*, 321 Md. 515, 523 (1991)). The Court of Appeals adopted Rule 4-332 for the specific purpose of fleshing out the prerequisites for pursuing a writ of "actual innocence." In *Douglas*, the Court had observed: "C.P. § 8–301 provides a defendant an opportunity to seek a new trial based on newly discovered evidence that speaks to his or her

8

actual innocence, as evident from the title of the statute itself." 423 Md. at 176. Indeed, not only the title of CP § 8-301, but also the text of the statute, describes the remedy as a writ of "actual innocence."

In *Yonga v. State*, ___ Md. ___ (2016), No. 30, September Term 2015 (filed January 27, 2016), the Court of Appeals addressed the question of whether a person who had entered a guilty plea was eligible to be granted a writ of actual innocence. The Court stated that it "acknowledge[d] that the statute is silent on the issue," ____ Md. at ____, Slip op. at 12, but nevertheless concluded that a writ of actual innocence is not available to attack a conviction that was entered following a plea of guilty. Recognizing the lack of express language in the statute addressing the availability of the writ for a person who had entered a guilty plea, the Court said: "The history of the legislation, our implementation through our Rules as well as our understanding of what 'actual innocence' means, juxtaposed against what a guilty plea involves, however, inform our conclusion that a person who has pled guilty may not later avail himself or herself of the relief afforded by the Petition for a Writ of Actual Innocence." *Id*. In the final paragraph of the opinion, the Court again stated that its interpretation of CP § 8-301 was supported by "the history of the legislation, our implementation through our Rules as well as our understanding of what 'actual innocence' means." ____ Md. at ____, Slip op. at 36.

In affirming the judgment of our Court — which had been reported at *Yonga v. State*, 221 Md. App. 45 (2015) — the Court of Appeals adopted the portion of Judge Charles

9

Moylan's analysis that juxtaposed a guilty plea with a claim of newly discovered evidence. *See Yonga*, ___ Md. at ___, Slip op. at 29-30, and *Yonga*, 221 Md. App. at 68-69. The Court of Appeals affirmed this Court's conclusion that "a person who has pled guilty may not later avail himself or herself of the relief afforded by the Petition for a Writ of Actual Innocence." ____ Md. at ____, Slip op. at 36. Because that aspect of Judge Moylan's opinion fully answered the question that was the subject of the writ of certiorari, the Court of Appeals did not need to address the availability of a writ of actual innocence for a convicted person who did not deny committing the offense. On that point, this Court stated in *Yonga*, 221 Md. App. at 58, that CP § 8-301 had its roots in the "revolution in forensic investigation that resulted from the rapidly evolving science of DNA identification." We noted that, in the context of capital punishment, which by its nature is irrevocable, the concern was "not with executing someone who might have been procedurally not guilty. . . . The concern was with actual, factual innocence." *Id*. We observed that "[t]here is no question that Maryland's first DNA statute was aimed at facilitating the exoneration of those convicted defendants who were actually innocent of the crime for which they had been convicted," *id*. at 59 (citing *Blake v. State*, 395 Md. 213, 219 (2006)). Judge Moylan observed in our opinion in *Yonga*: "The leitmotif of 'actual innocence' resonates throughout the caselaw." *Id*. (citing *Gregg v. State*, 409 Md. 698, 715 (2009); and *Thompson v. State*, 411 Md. 664, 679 (2009)). We further observed in *Yonga*, *id*. at 57, that, in *Bousley v.*

10

*United States*, 523 U.S. 614, 623 (1998), the Supreme Court had stated that "'actual innocence' means factual innocence and not mere legal insufficiency."

Although, in *Yonga*, the Court of Appeals did not need to reach the question of whether a person who could not profess factual innocence could qualify for a writ of actual innocence, we are persuaded that the Court has already answered this question by adopting a rule that expressly requires the petitioner to affirm "that the conviction sought to be vacated is based on an offense that the petitioner did not commit." Rule 4-332(d)(9). Unless and until the Court rescinds that rule, in the absence of legislative action to revise CP § 8-301, we will hold that a person who does not expressly deny committing the act that led to the conviction is not eligible for a writ of actual innocence.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

11